# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **Z.G. and J.G.**

**No. 20-0186** (Pocahontas County 19-JA-8 and 19-JA-9)

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.G., by counsel Teresa W. Helmick, appeals the Circuit Court of Pocahontas County's January 21, 2020, order terminating her parental rights to Z.G. and J.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Michael L. Jackson, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Joshua P. Hardy, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to order the DHHR to develop a family case plan, terminating her post-adjudicatory improvement period, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2018, the DHHR received a referral that four-year-old Z.G. shot another child with a pellet gun, causing life-threatening injuries. As part of the shooting investigation, a Child Protective Services ("CPS") worker observed Z.G. and J.G. at home playing barefoot on top of a handsaw lying in the yard. The CPS worker also found a "needle[] and Subutex" inside of petitioner's home. The parties entered into a safety plan in December of 2018, with petitioner agreeing to participate in services ensuring the safety of the children. The DHHR alleged that, as part of the safety plan, petitioner agreed to submit to random drug screenings, participate in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

parenting and life skills classes, and participate in multidisciplinary team ("MDT") meetings. The DHHR further alleged that over the following months, petitioner fell into noncompliance with the safety plan by failing to report for drug screens, testing positive for controlled substances when she did participate, refusing drug treatment, and lying about obtaining medical care for her children. As a result, the DHHR filed a child abuse and neglect petition against petitioner in June of 2019. In addition to her noncompliance with the safety plan, the DHHR also alleged that petitioner's parental rights to two older children had been involuntarily terminated due to substance abuse. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in August of 2019 wherein petitioner stipulated to abusing and neglecting the children due to her substance abuse and requested a post-adjudicatory improvement period. Petitioner testified that she participated in an MDT meeting the prior month and they developed the proposed terms and conditions of an improvement period. Petitioner acknowledged that she needed to maintain housing, provide financial support for the children, and complete and follow the recommendations of a psychological evaluation. Petitioner also acknowledged her substance abuse and testified that it was the biggest problem she needed to address. After additional assurances that she would attend substance abuse treatment, the circuit court granted petitioner a three-month post-adjudicatory improvement period. The circuit court reiterated that the terms and conditions of the improvement period would be the same as those recommended during her most recent MDT meeting. The circuit court reaffirmed those terms in its adjudicatory hearing order entered on October 2, 2019.

Two weeks after the circuit court issued its adjudicatory hearing order, the DHHR filed a case plan. The case plan outlined the issues petitioner needed to address including obtaining proper housing and employment, participating in random drug screens, attending adult life skills and parenting classes, and completing a psychological and substance abuse evaluation. Just days after the DHHR filed its case plan, another MDT meeting was held. At that meeting, service providers indicated that petitioner had missed parenting and life skills classes and failed to participate in some drug screens. In fact, service providers reported that petitioner was participating in services less than thirty percent of the time. The DHHR recommended that petitioner attend an in-patient drug treatment program and that her improvement period be extended despite her noncompliance.

In November of 2019, the circuit court held a review hearing wherein it declined to extend petitioner's improvement period but indicated it would consider a motion on the issue at the dispositional hearing. The circuit court also ordered that petitioner participate in a drug screen after the hearing. Petitioner participated in a test after the hearing which returned inconclusive. The next month, an MDT meeting was held wherein service providers reported that petitioner was still missing meetings and not calling in for drug screens. Petitioner claimed that she misplaced a list of in-patient drug treatment programs and another copy was provided to her. The DHHR suggested that petitioner speak with the Day Report Center to enter a drug treatment program and that she may be able to begin the same day. At the end of the meeting, the service provider also offered to help petitioner submit referrals or applications for treatment if she needed technical assistance.

2

The circuit court held a dispositional hearing in December of 2019. Petitioner did not appear but was represented by counsel. Petitioner's counsel proffered that petitioner found a drug treatment program and that she was awaiting transportation to attend the program. A service provider testified that she had provided parenting and adult life skills classes to petitioner since October of 2018. The service provider testified that she gave petitioner a list of drug treatment programs in March of 2019 and offered to assist her with applying to those programs again in July of 2019 but witnessed no progress in petitioner's drug treatment. The service provider also testified that petitioner had missed parenting sessions multiple times each month since the beginning of her improvement period and attended no more than half of the sessions. Next, a day report center employee testified that he conducted random drug screenings of petitioner. The employee testified that petitioner tested positive for methamphetamine in October of 2019 and provided an inconclusive screening the following month. The employee testified further that petitioner never acknowledged that she had a drug problem and did not indicate she would test positive for methamphetamine at the October screening despite being asked prior to providing the sample. The employee also testified that petitioner failed to call in daily, as required, to determine the dates of her random screenings.

Finally, the CPS caseworker testified that petitioner had not complied with the terms and conditions of her improvement period since August of 2019. The CPS worker testified that a key requirement of the improvement period was to complete a psychological evaluation and follow the recommendations. The caseworker testified that petitioner completed the evaluation but failed to follow through on the recommendation for drug treatment. The caseworker testified that she did not know if petitioner was entering treatment the day of the hearing. However, she noted that petitioner was required to maintain contact with her but had not contacted her since the last MDT meeting, other than through her attorney to say she allegedly had been accepted into a drug treatment program. The caseworker also testified that petitioner had a substance abuse problem, lacked housing and financial stability, and was unlikely to further comply with an extension of her improvement period given her failure to address her drug addiction. The CPS worker reiterated that petitioner had been given multiple opportunities to enter drug treatment and was unwilling to follow through with treatment. The CPS worker also indicated that petitioner had successful visits with the children but that she had recently missed several visits, which was traumatic for the young children. After the end of the caseworker's testimony, the circuit court announced that it was "quite reluctant" to terminate parental rights if a parent was entering a drug treatment program. The circuit court continued the hearing to allow petitioner to demonstrate that she entered a treatment program.

Later that month, the circuit court resumed the dispositional hearing and petitioner appeared in person. Petitioner testified that a bed had been available for her at a drug treatment program but that she could not secure transportation from the day report center. The circuit court inquired whether petitioner had contacted her attorney or the DHHR for transportation. Petitioner said she did not but that she secured other transportation there until the car broke down on the way there. The circuit court remarked that if petitioner "had contacted the [DHHR] at any point during the pendency of this action . . . the Department would have provided transportation." As a result, the circuit court found that petitioner had been offered significant assistance, including transportation to a drug treatment program, but had essentially turned down that assistance. The

circuit court further found that this included the DHHR's reasonable efforts to remedy the fundamental problem in petitioner's case—her drug addiction. The circuit court found clear and convincing evidence that petitioner failed to avail herself of services that could assist her in addressing the conditions of abuse and neglect. The circuit court further found that petitioner demonstrated an unwillingness and inability to comply with services to attain minimally adequate parenting. Based upon these findings, the circuit court concluded there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's parental rights.[2] The circuit court entered an order reflecting its decision on January 21, 2020. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in failing to order the DHHR to develop a family case plan and that the case plan was not filed within thirty days of the inception of the improvement period as required. Further, petitioner argues that the case plan that was ultimately submitted was not developed by the MDT and petitioner was not allowed to provide input. We find petitioner's arguments unavailing.

First, we find no issue with the timing of the case plan's filing. Pursuant to West Virginia Code § 49-4-408(a), "[t]he case plan must be filed within sixty days of the child coming into foster care or within thirty days of the inception of the improvement period, whichever occurs first." It is uncontroverted that the case plan was filed on October 16, 2019. On appeal, petitioner does not assert that this was more than sixty days from the date the children were placed into foster care. She does argue, however, that it was more than thirty days after the inception of her improvement

---

[2]The father's parental rights also were terminated during the proceedings below, and no appeal has been filed. According to the parties, the permanency plan for the children is adoption in their current foster home.

4

period. What petitioner fails to recognize, however, is that "[i]t is a paramount principle of jurisprudence that a court speaks only through its orders." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006) (citation omitted). The circuit court entered its order granting petitioner an improvement period on October 2, 2019, and two weeks after the entry of that order the DHHR filed the case plan—well within the time requirements of West Virginia Code § 49-4-408(a).[3]

Next, we find no evidence to support petitioner's assertion that the case plan that was submitted was not developed by the MDT or that she was excluded from its formulation. In fact, petitioner's position on appeal is entirely untenable, given that she does not dispute that she attended an MDT meeting where the terms of the family case plan were agreed upon. As the record shows, the court and the parties had an extensive discussion at the hearing in August of 2019 about the plan's creation; this included extensive testimony from petitioner about her participation in the MDT meeting, during which the plan was created, and her understanding of the terms set forth therein. To the extent petitioner argues that she was present at this meeting but in some way precluded from providing input on the plan's terms, this issue has been waived by her failure to raise an objection to the plan at any point in the proceedings. *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999).").

Most importantly, we find that petitioner was in no way prejudiced by any issue surrounding the case plan's creation. Again, petitioner testified in August of 2019 that she participated in the plan's creation and agreed to the terms and conditions it set forth for her improvement period. In her testimony, petitioner acknowledged that she needed to maintain housing, provide financial support for the children, and complete a psychological evaluation and follow its recommendations. Additionally, at the adjudicatory hearing, the circuit court went through each of the proposed terms and conditions of an improvement period with the children's father, who was also being adjudicated, as petitioner listened. The circuit court then asked petitioner if she understood those same terms and conditions; she confirmed her understanding. The circuit court also asked petitioner if any of the terms and conditions seemed unfair or unduly burdensome, and petitioner said, "No." The circuit court further inquired if petitioner would be

---

[3]In reviewing the appendix record, this Court notes there was a substantial delay between the date of the adjudicatory hearing and the entry of the order resulting from that hearing. We remind circuit courts of the rules establishing strict guidelines for the entry of abuse and neglect orders and the need to be ever vigilant in expediting abuse and neglect matters in an effort to promptly achieve permanency for the children involved in such proceedings. *See* W. Va. R. P. Child Abuse & Neglect Proceedings 27 (requiring that an adjudicatory order must be entered within ten days of the adjudicatory hearing) & 36 (dictating filing period for entry of dispositional hearing order). *See also* W. Va. Code § 49-4-601(j) (prioritizing abuse and neglect proceedings); Syl. Pt. 1, in part, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) ("Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.").

willing to attend an in-patient drug treatment program. Petitioner responded positively and admitted that substance abuse was her biggest issue. "The purpose of the family case plan as set out in [W. Va. Code § 49-4-408] is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 2, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003) (citation omitted). Based on the record, it is clear that the purpose of the family case plan was achieved, as petitioner was aware of the problems that needed to be addressed and the steps to resolve them well before her improvement period began.

Petitioner also argues that the circuit court erred in terminating her parental rights rather than granting her a less-restrictive disposition. According to petitioner, the circuit court was required to give precedence to the dispositions as listed in West Virginia Code § 49-4-604(c) and that it should have granted her disposition pursuant to § 49-4-604(c)(5).[4] We find no error in the circuit court's termination of petitioner's parental rights.

Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are directed to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" as follows: "the abusing [parent] . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help."

Here, petitioner's parental rights to two older children were previously terminated due to her substance abuse. Despite the experience of those prior proceedings, petitioner continued to abuse drugs. Clearly, petitioner failed to address the circumstances of abuse from the prior proceedings. To the extent petitioner argues that she was willing to participate in a substance abuse treatment program, we note that petitioner failed to attend a treatment program despite several months of the DHHR and service providers offering to assist her in securing admission. Indeed, the record shows that the DHHR and service providers offered to assist petitioner with drug treatment throughout the proceedings, including providing her a list of programs and offering to serve as references or provide technical assistance and transportation. While petitioner argues that she should have been granted a less-restrictive alternative to termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia

---

[4]West Virginia Code § 49-4-604(c)(5) provides that, at disposition, a circuit court may

[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to address the conditions of abuse, we find no error in the circuit court finding that there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the near future and that termination was necessary for the children's welfare. Therefore, we likewise find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 21, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 2, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice William R. Wooton