**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **W.B.**

**No. 21-0720** (Fayette County 20-JA-178)

**MEMORANDUM DECISION**

Petitioner Mother E.B., by counsel Nancy S. Fraley, appeals the Circuit Court of Fayette County's August 31, 2021, order terminating her parental, custodial, and guardianship rights to W.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Christopher S. Moorehead, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and in terminating her parental, custodial, and guardianship rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the proceedings giving rise to this appeal, petitioner was involved in an abuse and neglect proceeding in regard to several older children. This earlier proceeding began in February of 2019, when the DHHR filed a petition alleging inappropriate physical discipline; failure to care for the children's basic hygiene; failure to provide the children with appropriate clothing, including winter coats; failure to provide the children with sufficient food; and domestic violence. When Child Protective Services ("CPS") workers investigated the home,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

they had to be accompanied by law enforcement because of the older children's father's aggressive behavior. The CPS investigation revealed a filthy home with little food and unsafe conditions. When the DHHR took emergency custody of the children, petitioner stated that she had no clothing to send for the children. Following the children's removal, one of them disclosed that that father showed him pornographic images. The petition in the prior matter also alleged an extensive history of CPS involvement that began in 2010, including an ongoing CPS investigation into allegations that the father sexually abused one of the children. There were also several referrals for drug use in the home, although these were unsubstantiated. Finally, the DHHR alleged that petitioner failed to protect the children from domestic violence and excessive corporal punishment and neglected the children by failing to provide them with food, clean and appropriate clothing, and suitable housing.

Petitioner later stipulated to domestic violence in the home and was granted an improvement period. Because of additional information uncovered regarding the father's sexual abuse of the children, petitioner was prohibited from having any contact with the father during her improvement period. However, it was later discovered that petitioner was violating this order, in addition to talking about the confidential case over social media. Even more troubling, petitioner's comments indicated that petitioner believed neither she nor the father had done anything wrong and that she "struggle[d] to grasp why the children were removed from her care." Ultimately, petitioner voluntarily relinquished her parental rights to the children at a hearing in August of 2020. At that time, petitioner was pregnant with W.B.

Four months later, the DHHR filed the petition giving rise to the matter currently on appeal. According to a petition filed in December of 2020, the DHHR alleged that petitioner gave birth to W.B. that same month. The DHHR further alleged that law enforcement was continuing its investigation into the older children's father and his sexual abuse of those children. The petition alleged that law enforcement informed the DHHR that petitioner was "allegedly complicit in the sexual assaults of [the father] due to being aware on multiple occasions what was occurring with her children and failing to report [the father] and ensure the safety of her children." The DHHR also alleged that the maternal grandmother disclosed that, prior to W.B.'s birth, petitioner was "arranging plans to leave the state . . . to deliver [W.B.] in hopes of avoiding CPS intervention." The maternal grandmother also indicated that petitioner was residing with the father of her older children in a camper. Accordingly, the DHHR alleged that petitioner abused and neglected W.B. because of her history of domestic violence, which had not been corrected, and her past history of failing to protect her children from sexual abuse.

Following the petition's filing, petitioner failed to appear for the preliminary hearing, although she was represented by counsel. Petitioner's whereabouts at the time of the hearing were unknown. Thereafter, petitioner filed a written stipulation in which she admitted to abusing and/or neglecting W.B. At an adjudicatory hearing in March of 2021, the court accepted the stipulation and adjudicated petitioner of abusing and neglecting the child.

Later in March of 2021, the parties convened a multidisciplinary team ("MDT") meeting, which petitioner did not attend. According to the MDT report, petitioner admitted that after W.B.'s removal "she went off the rails and used [h]eroin." Petitioner's counsel informed the MDT that petitioner was in a short-term substance abuse treatment program and would then

transition into long-term treatment. The following month, petitioner filed a motion for a post-adjudicatory improvement period in which she set forth her efforts in substance abuse treatment and indicated that she would comply with a broad range of remedial services. During a hearing in April of 2021, petitioner's counsel indicated that petitioner admitted to abusing heroin after she relinquished her parental rights to her older children in the prior proceeding. The record shows that petitioner abused heroin while pregnant with W.B., although she claimed that she ceased her substance abuse when she learned she was pregnant, and records from her admission to give birth to the child did not reflect drugs in her system. According to counsel, petitioner admitted that she "went on a binge and started using drugs and got addicted to heroin." After the DHHR took custody of W.B., petitioner relapsed before recognizing that she needed substance abuse treatment. During that hearing, the court stated that petitioner "has somewhat of a heavy load to pull to show the [c]ourt that she is likely to successfully complete an [i]mprovement [p]eriod." The following month, an MDT report indicated that petitioner continued in her substance abuse treatment.

In May of 2021, the court held a hearing on petitioner's motion for an improvement period. At the hearing, petitioner stressed her ongoing efforts in substance abuse treatment and further indicated that she finally believed that her older children's father sexually abused those children. Petitioner indicated that she would be willing to cooperate with law enforcement in its investigation into the father's sexual abuse of the older children. Both the DHHR and the guardian objected to the motion. The guardian specifically pointed to petitioner's failure during an improvement period in the prior proceedings, arguing that she was ordered to have no contact with the older children's father but "she deceived everybody and did it anyway in violation" of the court's order by choosing to have continued contact with the individual alleged to have sexually abused her older children. The guardian elaborated that the parties "thought [petitioner] was staying away until we started catching her and could have proved it at a [d]isposition [h]earing that she was actually having contact with [the father]. And that's when she decided to relinquish." The guardian further argued that petitioner was in a considerably worse position than in the prior proceedings, as she not only failed to remedy the conditions of abuse and neglect at issue from the prior matter but had also developed a substance abuse problem in the interim. During the hearing, the court questioned petitioner's ability to be successful in the improvement period, given that she was unable to resolve the issues from the prior proceedings despite having been granted an improvement period. The court found that petitioner previously "had an opportunity to keep her children with her by getting away from [the father], having lifestyle changes, following an [i]mprovement [p]eriod with those four children. And yet when it came right down to it, she gave them up." The court noted petitioner's testimony about having accepted that her older children's father abused them, but went on to find that petitioner "has not convinced the [c]ourt that she has turned over a new leaf in life and wants to be a good mother." The court ultimately denied the motion, finding that petitioner was "unlikely to successfully participate in an improvement period."

In a report from a June of 2021 MDT hearing, the DHHR noted that petitioner's counsel did not know her whereabouts, and that one of petitioner's family members indicated that petitioner had relapsed on drugs and again submitted to a short-term substance abuse treatment program. Both the DHHR and the guardian recommended termination of petitioner's parental

rights, arguing that, since the prior proceedings, "[t]hings have gotten worse because now [petitioner] also has a substance abuse problem."

The court originally convened the dispositional hearing on July 6, 2021, but petitioner failed to appear. On July 30, 2021, the court held the final dispositional hearing. According to the appendix, the court made several documents, including MDT reports and the report of the guardian, part of the record. The court also took judicial notice of the entire casefile from petitioner's prior abuse and neglect proceedings. The court then heard testimony from a CPS worker and petitioner. Based on the evidence, the court found that petitioner was adjudicated for domestic violence in the prior case and then proceeded to begin abusing substances prior to the initiation of the current proceedings. The court also noted that petitioner completed only "two short-term stays at different rehabilitation centers" and had "very limited contact" with the DHHR. Accordingly, the court found that petitioner "has demonstrated by her conduct that she has done nothing to remedy the conditions of abuse and neglect." The court found that petitioner "has a continued blind spot" for the father of her older children and that petitioner's older children expressed fears to the DHHR that W.B. would be subjected to the same abuse they endured if returned to petitioner's custody. Accordingly, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the child's welfare required termination of petitioner's parental, custodial, and guardianship rights. As such, the court terminated those rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The child's unknown father's parental rights were also terminated. The permanency plan for the child is adoption in the current foster home.

On appeal, petitioner first argues that it was error to deny her motion for a post-adjudicatory improvement period "given that no services were offered to the [p]etitioner following her stipulated adjudication such that she was denied a meaningful opportunity to establish clear and convincing evidence she would participate" in such an improvement period. This argument, however, misstates the law governing the granting of improvement periods and conflates the DHHR's statutory responsibility to make reasonable efforts to preserve a family with the granting of an improvement period.

Petitioner is correct that improvement periods are governed by West Virginia Code § 49-4-610, which sets forth that, in order to obtain one, a parent must "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." What this statute does not require, however, is that the DHHR provide any services prior to the filing of a motion for an improvement period so that a parent may demonstrate compliance with services in order to bolster the evidence in support of their motion. On appeal, petitioner cites to no law or other authority that would require the DHHR to provide services so that she could satisfy her burden for obtaining an improvement period. As such, she is entitled to no relief in this regard.

Petitioner further argues that the circuit court applied an inappropriate standard in ruling on her motion. Although she acknowledges that the circuit court's order "did apply the proper burden," she argues that the transcript of the hearing demonstrates that the circuit court erroneously held her to a standard of showing that she would "successfully complete an improvement period." Petitioner's argument fails for two reasons. First, we have previously explained that "where a circuit court's written order conflicts with its oral statement, the written order controls." *Legg v. Felinton*, 219 W. Va. 478, 484, 637 S.E.2d 576, 582 (2006). Given that petitioner concedes that the circuit court's order applied the appropriate standard, she cannot be entitled to relief. Second, petitioner ignores the fact that we have explained that circuit courts have the discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). As such, the circuit court did not err in considering whether petitioner could successfully complete an improvement period.

Even more importantly, the record overwhelmingly supports the circuit court's denial of petitioner's motion. As set forth above, petitioner voluntarily relinquished her parental rights to four older children just four months prior to the initiation of the current proceedings while pregnant with W.B. The record further shows that petitioner not only failed to remedy the conditions from the prior proceedings, but that she also became addicted to heroin in the interim. As several witnesses and parties pointed out below, petitioner was in a much worse position than she was when she voluntarily relinquished her parental rights to those older children. While it is commendable that petitioner participated in substance abuse treatment, the record nonetheless shows that she relapsed after her first short-term treatment program during these proceedings and had to re-enter a similar program. Simply put, petitioner's participation in substance abuse treatment and other services was insufficient to establish that she was likely to fully participate in an improvement period, given that she had just unsuccessfully participated in an improvement period a matter of months before in her prior proceeding. Accordingly, we find no error in the circuit court's denial of petitioner's motion.

Finally, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights to the child because the DHHR was not required to seek termination of her parental rights under West Virginia Code § 49-4-605(a). Petitioner is correct that none of the circumstances set forth in that statute[3] are present in the current matter. What petitioner fails to recognize, however, is that this statute simply imposes an affirmative duty on the DHHR to seek termination in these specific circumstances. Importantly, the statute does not *preclude* the DHHR from seeking termination of parental rights *absent* one or more of these conditions. Accordingly, her reliance on this statute is misplaced. Petitioner also argues that the circuit court erred in finding that the DHHR made reasonable efforts to preserve the family, but this argument is similarly misplaced and totally ignores petitioner's refusal to participate in the proceedings.

Under West Code §§ 49-4-604(c)(6)(C)(iii) and (iv), the court's dispositional order must include findings as to whether the DHHR made reasonable efforts to preserve and reunify the family. Petitioner argues that the court's finding that the DHHR made such reasonable efforts is not supported by the record, but we do not agree. While it is true that, other than one drug screen,

---

[3]West Virginia Code § 49-4-605(a) provides that

[e]xcept as provided in § 49-4-605(b) of this code, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:
(1) If a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home;
(2) If a court has determined the child is abandoned, tortured, sexually abused, or chronically abused;
(3) If a court has determined the parent has committed murder or voluntary manslaughter of another of his or her children, another child in the household, or the other parent of his or her children; has attempted or conspired to commit murder or voluntary manslaughter or has been an accessory before or after the fact of either crime; has committed unlawful or malicious wounding resulting in serious bodily injury to the child or to another of his or her children, another child in the household or to the other parent of his or her children; has committed sexual assault or sexual abuse of the child, the child's other parent, guardian or custodian, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent; or the parental rights of the parent to another child have been terminated involuntarily; or
(4) If a parent whose child has been removed from the parent's care, custody, and control by an order of removal voluntarily fails to have contact or attempt to have contact with the child for a period of 18 consecutive months: Provided, That failure to have, or attempt to have, contact due to being incarcerated, being in a medical or drug treatment or recovery facility, or being on active military duty shall not be considered voluntary behavior.

petitioner did not participate in services in this matter, it was not due to a lack of reasonable efforts on the part of the DHHR. The record shows that the DHHR referred petitioner for services, including parenting and adult life skills education. According to a DHHR employee, the contact information petitioner gave the DHHR was passed along to a service provider, yet the witness indicated that the provider told her on numerous occasions that the provider was unable to contact petitioner. The witness also indicated that she "had no contact with [petitioner] other than when she appears for court." Compounding the issue is the fact that even petitioner's attendance in court was sporadic, as the record shows that she failed to appear for multiple hearings and MDT meetings, with even her counsel being unaware of her whereabouts at times. Further, the DHHR was unable to communicate with any of petitioner's rehabilitation facilities because petitioner failed to execute the necessary releases. While it is true that petitioner testified that no provider ever tried to contact her, the circuit court heard this evidence and resolved it in the DHHR's favor. This is a credibility determination that we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Given the substantial evidence demonstrating petitioner's refusal to remain in contact with the DHHR or even attend all required hearings and meetings, it is clear that the circuit court did not err in finding that the DHHR made reasonable efforts to preserve the family. Petitioner was simply not receptive to them.

Ultimately, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare, the two findings necessary for termination of parental, custodial, and guardianship rights under West Virginia Code § 49-4-604(c)(6). Petitioner does not challenge these findings on appeal. Further, we note that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As set forth above, the court had ample evidence upon which to base this finding. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 31, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment