FILED

**April 22, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0561 – *State of West Virginia ex rel. Dodrill Heating and Cooling, LLC v. The Honorable Maryclaire Akers, Judge of the Circuit Court of Kanawha County; and Jerry and Pamela Whittington, husband and wife, individually and on behalf of all others similarly situated*

Chief Justice Hutchison, concurring:

It is a basic rule, of fairness and of process, that judges speak through their orders. The majority did not issue a writ of prohibition in this case because the circuit judge reached a wrong result. We did so only because the judge did not plainly and fully explain in her order – to the parties and to the public – why a class action is the best way forward. Still, I feel a need to concur to explain two points in the majority's opinion.

The facts in this case are quite simple: in the middle of the summer, plaintiffs Jerry and Pamela Whittington bought a new whole-house heating and cooling unit from Dodrill Heating and Cooling. The unit was either defective or the installation was done wrong. Within days it leaked fluid, wiring burned out,[1] valves broke, the cooling unit stopped working. Dodrill's repeated attempts at repair over the following six weeks failed. Dodrill's installation contract had a "money back," "satisfaction" guarantee;[2] when the

---

[1] The Dodrill *repair* technician who discovered the burned wiring told the plaintiffs that the Dodrill *installation* technicians had used the wrong type of wiring when they installed the new unit.

[2] Dodrill's "Proposal/Agreement" to the plaintiffs provides: "**GUARANTEES**: ✓Comfort ✓No Lemons . . . ✓Money Back . . . **Satisfaction:** We will guarantee that your system meets or exceeds your expectations for quality and reliability."

1

plaintiffs said they weren't satisfied and demanded Dodrill return their money, Dodrill refused because the plaintiffs wouldn't let Dodrill try and repair the unit just one more time. On these simple facts, a lawsuit was born.

When the plaintiffs hired their lawyer, the lawyer looked at the documents Dodrill had handed to the plaintiffs. Every proposal, contract, or invoice that Dodrill prepared had language saying, in effect, that the plaintiffs would have to pay any attorney or collection fees Dodrill might incur to secure payment for the broken unit.[3] After a little discovery, the plaintiffs' lawyer found Dodrill had included the same language in proposals, contracts, and invoices it gave to 9,000 or more other customers.

West Virginia's Consumer Credit and Protection Act appears to specifically prohibit companies from making such threats against consumers. The Act lays out various "protective measures for consumers in transactions[.]" W. Va. Code § 46A-1-103(3) (1996). One of those protective measures prohibits a "debt collector" from using "any fraudulent, deceptive or misleading representation or means" to collect a debt or to obtain information from a consumer. W. Va. Code § 46A-2-127 (1997) ("Section 127"). The Act lays out various examples of outlawed debt collection practices, including (in Section 127(g)) prohibiting a debt collector from making "[a]ny representation that an existing

---

[3] The "Proposal/Contract" said "Buyer agrees to any reasonable attorney or collection fees incurred by seller in securing payment for this contract." Dodrill's repair invoices said that, by accepting Dodrill's work, the plaintiffs agreed that "in the event collection efforts are initiated . . . [you] shall pay for all associated fees at the posted rates as well as all collection fees and reasonable attorney fees."

obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges[.]" W. Va. Code Ann. § 46A-2-127(g).[4]

Obviously, the plaintiffs sued over the faulty HVAC unit. But the plaintiffs also alleged Dodrill violated the Consumer Credit and Protection Act. They did not seek damages for just themselves, they sought damages for over 9,000 other Dodrill customers who supposedly received the same threats. In the order on appeal, the circuit court said the allegation looked ripe to be resolved in a class action. Dodrill, however, ran to this Court with two claims: that the plaintiffs did not have standing to sue under the Consumer Credit and Protection Act, and that the circuit court did not make clear that the plaintiffs'

_____

[4] If a defendant is found to have violated the Act, a consumer is permitted to recover their actual damages plus a penalty of $1,000 per violation of the Act (up to $175,000 or the amount of indebtedness, if higher). The same remedy applies to each consumer in a class action. West Virginia Code § 46A-5-101(1) (2017) creates this civil remedy for consumers:

> If a . . . debt collector has violated the provisions of this chapter [Chapter 46A] applying to . . . any prohibited debt collection practice . . . the consumer has a cause of action to recover: (a) Actual damages; and (b) a right in an action to recover from the person violating this chapter a penalty of $1,000 per violation: Provided, That the aggregate amount of the penalty awarded shall not exceed the greater of $175,000 or the total alleged outstanding indebtedness: Provided, however, That in a class action the aggregate limits on the amount of the penalty set forth above shall be applied severally to each named plaintiff and each class member such that no named plaintiff nor any class member may recover in excess of the greater of $175,000 or the total alleged outstanding indebtedness. . . .

allegations "predominate" over other, individual questions for all the class members. Let me expound upon the Court's resolution of these two claims.

## A. Standing

Dodrill's primary claim to this Court was that the plaintiffs do not have standing to pursue a claim under Section 127(g) because they cannot prove Dodrill was a "debt collector." Dodrill first says it isn't a debt collector because it never tried to collect any payment for installing the HVAC unit, mostly because Dodrill got the plaintiffs to pay Dodrill's bill in full using third party financing (financing that Dodrill arranged for the plaintiffs). Dodrill argues that a company should be allowed to include menacing language in its bills or contracts threatening to charge consumers attorney fees and collection costs, just so long as the consumer pays the bill and the company is never provoked to act upon those threats.

Standing is not a high hurdle for a plaintiff. The plaintiff must only show some "injury-in-fact" that forms the basis of their lawsuit, and that the "injury" can be redressed through a decision by the trial court. Syllabus Point 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002). Dodrill, however, misreads the "injury-in-fact" requirement to suggest it requires a plaintiff to sustain a physical injury, or a monetary, out-of-pocket loss. What Dodrill's argument misses is that a plaintiff *does* sustain an injury in fact when the defendant directs a threat at a consumer or engages in other fraudulent or deceptive conduct prohibited by the Act.

4

The plain language of Section 127(g) prohibits "any representation" that a company will attempt to collect fees or collection costs; ergo, the Act prohibits threats, not merely the actual taking of those charges from a consumer. As we noted in *State ex rel. 3M Co. v. Hoke*, 244 W. Va. 299, 852 S.E.2d 799, 813 (2020), the Act was designed to do more than just compensate a consumer physically or monetarily harmed by conduct proscribed by the Act. The Act imposes civil penalties to punish those who violate the Act. Further, the penalties dissuade other actors from using fraudulent, deceptive, and misleading conduct that the Legislature has deemed harmful to West Virginians in general:

> The [Consumer Credit and Protection Act] is intended to deter deceptive practices and to protect West Virginia consumers from fraud, and the goal is to protect the public as a whole. As one state court found in interpreting a similar civil penalty statute, "Because the CCPA's civil penalty requirement is intended to punish and deter the wrongdoer and not to compensate the injured party, the CCPA is intended to proscribe deceptive acts and not the consequences of those acts." *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 972 (Colo. 1993).

*Id.* at 312, 852 S.E.2d at 813. The civil penalties also compensate the plaintiff for enforcing the Act. Stated succinctly, a plaintiff need not allege out-of-pocket damages or other injuries to maintain an action under the Act. The plaintiff must only assert a violation of the Act's terms by the defendant and that the defendant's conduct was directed toward the plaintiff. The Act is analogous to criminal law, in that a threat or representation of an intent to harm someone is as actionable as actual harm itself.

Dodrill does not seriously dispute the clear, unambiguous threat contained in its proposal and invoices that it intended to collect attorney fees and costs from the

5

plaintiffs, if it tried to collect on its bill. Instead, the second part of Dodrill's standing

argument suggests that Dodrill is not a professional debt collector who chases customers

over unpaid bills and, hence, is exempt from the meaning of "debt collector" as defined in

the Act. However, this Court firmly rejected Dodrill's attempts at legal sophistry. The Act

defines a "debt collector" as a person or organization that engages in "debt collection,"

meaning they take any "action, conduct or practice" to collect a consumer's obligation to

pay money that arose from some transaction in money, property, insurance or services. *See*

W. Va. Code §§ 46A-2-122 (b), (c), and (d).[5] The plaintiffs' complaint clearly asserts that

the documents presented by Dodrill were intended to compel the plaintiffs to pay money

in exchange for Dodrill installing the HVAC unit that is the focus of the parties' transaction.

Moreover, this Court has made clear that a person or organization does not have to be a

"professional" or full-time debt collector to be bound by the Act. In Syllabus Point 3 of

---

[5] In reverse order, the Act provides:

> (d) "Debt collector" means any person or organization engaging directly or indirectly in debt collection. . . .

> (c) "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer.

> (b) "Claim" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.

W. Va. Code § 46A-2-122(b), (c), and (d).

6

*Thomas v. Firestone Tire and Rubber Co.*, 164 W. Va. 763, 266 S.E.2d 905 (1980), this

Court found that

> The plain meaning of W.Va. Code § 46A-2-122
> requires that the provisions of article 2 of Chapter 46A
> regulating improper debt collection practices in consumer
> credit sales must be applied alike to all who engage in debt
> collection, be they professional debt collectors *or creditors
> collecting their own debts.*

(Emphasis added).  The plaintiffs allege that Dodrill was a creditor seeking to collect upon

its own debt – the debt the plaintiffs incurred when they agreed to pay for a heating and

cooling unit provided and installed by Dodrill.

In a nutshell, the record wholly supports the Court's finding that the plaintiffs

have standing.  The plaintiffs sufficiently alleged that Dodrill was attempting to collect a

debt owed by the plaintiffs when it threatened the plaintiffs with attorney's fees and

collection costs, if the plaintiffs failed to pay their debt.  When Dodrill made a

representation that threatened the plaintiffs, in violation of the Act, it created an "injury in

fact."  The plaintiffs therefore have standing to go forward with their own claim, and they

have standing to pursue in a class action the claims of other Dodrill customers subjected to

similar conduct.

**B.  Predominance in a Class Action**

Under the West Virginia Rules of Civil Procedure, a party may seek to form

a class action by showing evidence supporting all four elements in Rule 23(a) and at least

one of the three subdivisions in Rule 23(b).[6] The plaintiffs in this case sought a class action under Rule 23(b)(3).

Rule 23(b)(3) of the West Virginia Rules of Civil Procedure required the circuit court in this case to make two findings: "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." These are the "predominance" and "superiority" requirements.

This Court has couched the predominance and superiority analysis as requiring a "thorough" and "rigorous" analysis by the circuit judge. In reality, Rule 23(b)(3) deliberately encompasses malleable standards. The drafters of Rule 23 thought the words "'predominance' and 'superiority' were like silly putty that could be molded in

---

[6] As we said in Syllabus Point 8 of *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003):

> Before certifying a class under Rule 23 of the West Virginia Rules of Civil Procedure [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party.

8

any way by a judge in a particular context." *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 271, 852 S.E.2d 748, 771 (2020) (Hutchison, J., concurring).

Exactly what is meant by "predominate" is not made clear in Rule 23(b)(3). *Surnaik Holdings* offers some qualitative or quantitative guides.[7] Predominance is a common battleground for certification decisions but is basically an inquiry into the material legal or factual questions presented by the class members. The goal is for a court to find if the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594, (1997). Predominance does not mean

---

[7] Syllabus Point 7 of *Surnaik Holdings*, 244 W. Va. at 250, 852 S.E.2d at 750, offers these guidelines for assessing predominance and superiority:

> When a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority prerequisites of Rule 23(b)(3) have been satisfied. The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification.

that individual questions concerning class members do not exist; it merely means that some common question predominates among members. If a question can be "can be resolved for all members of [a] class in a single adjudication," then the predominance requirement is satisfied. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7AA Wright & Miller, *Federal Practice & Procedure* § 1778 (3d ed. 2011).

> Or, to put it another way, common questions can predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006), quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

*Id.*

"Superiority is the oft-overlooked sibling of predominance." Christine P. Bartholomew, *The Failed Superiority Experiment*, 69 Vand. L. Rev. 1295, 1300 (2016). *See also*, Jay Tidmarsh, *Diagnosis and Treatment of the "Superiority Problem,"* 69 Vand. L. Rev. En Banc 267, 268 (Among the terms used in Rule 23, "none is slipperier to understand than 'superiority.'"). Rule 23(b)(3)'s superiority requirement is comparative: the circuit court must assess the efficiency of a class action with an eye toward "other available methods," as well as the interests of the class members, whether other litigation

has been commenced, what forum should be the locus of litigation, and the management difficulties of a class action. *See* Rule 23(b)(3)(A)-(D). "The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action[.]" 7AA Wright & Miller, *Fed. Prac. & Proc. Civ*. § 1779 (3d ed. 2011). Refusing to certify on manageability grounds alone should be the last resort. "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).[8]

---

[8] In the instant case, the plaintiffs seek a class action to resolve their allegation that Dodrill violated the Act, in a similar manner, toward over 9,000 consumers. These consumer class members are easily identified, but Dodrill vigorously contends that the plaintiffs cannot represent these similarly situated consumers in a class action. Hence, one alternative would be for the plaintiffs to file a complaint joining those 9,000 separate consumers into their action. Another would be for the plaintiffs' attorney to sign representation agreements with all 9,000 consumers, file 9,000 separate lawsuits (while filing a separate filing fee for each), and then have the circuit court transfer and consolidate those 9,000 lawsuits under Rule 42 for joint resolution. Either instance would impose significant administrative and fiscal burdens on the plaintiffs' attorney, on the circuit clerk that would handle the increased paperwork, and on the defendant, which would be required to respond to each joinder motion or separate lawsuit. The circuit court would also be required to expend considerable time and energy consolidating and managing 9,000 separate litigants and lawsuits.

Stated differently, in this case, the plaintiff's suggestion that the circuit court certify a class action to resolve the same predominating legal and factual question about the Act for over 9,000 consumers appears to be the superior method compared to the other available methods. Since a class action requires only one plaintiff, one complaint, one judge, and eliminates dozens of pleadings, motions and filing fees along with a mountain of attorneys' fees (all of which, if the plaintiffs were successful, would be paid for by the

11

Overall, Rule 23 is a robust procedural tool that permits courts to efficiently resolve complicated questions. What makes sense for one class action creates problems in another. The only requirement in Rule 23(b)(3) is that at least one question predominate among the class members such that a class action is the superior vehicle to resolve that question. There is no mechanical requirement in the rule that a class action only encompass one question, or that there be no individual questions. Rule 23(c)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues" and, hence, infers that the same action may be dissolved into smaller proceedings to address other issues. In other words, a court may certify a class as to some common issues, and later decertify the action as to other issues not common to all members. "[S]eparate juries may decide different issues. One jury will render a verdict as to the common, certifiable issues. In many instances it would be impracticable to expect that same jury to be empaneled long enough to resolve all of the noncertified issues of each class member as well." *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 29 (E.D.N.Y. 2001) (Weinstein, J.). *See also* Susan E. Abitanta, *Bifurcation of Liability and Damages in Rule 23 (b)(3) Class Actions: History, Policy, Problems, and A Solution*, 36 Sw. L.J. 743 (1982).

Rule 23 parallels Rule 16 and Rule 42 of the Rules of Civil Procedure, which grant a trial court broad authority to join or sever parties and issues for trial or "adopt[]

---

defendant under W. Va. Code § 46A-5-104), a class action would seem to be the superior vehicle. However, it is up to the circuit court to consider the evidence and arguments of the parties before adopting its ruling.

special procedures for managing potentially difficult or protracted actions that may [involve] complex issues, multiple parties, difficult legal questions, or unusual proof problems[.]" Rule 16(c)(12).[9]  Lastly, judges should understand that the certification of a class action is not an irreversible act: a class may be decertified after a liability ruling, or decertified when facts later reveal that a class action is not the best tool for resolving the dispute.[10]

An essential guide for every judge conducting a predominance analysis under Rule 23(b)(3) is this: "do not let the trees blind you to the forest:"

> Defendants attempting to avoid class certification will, almost exclusively, overwhelm a circuit judge with the differences between each class member's case.  It is akin to a judge being asked to look at a forest of oak trees and being told the difference between each tree: each tree has a different height, a different color, a different number of leaves, a unique number of branches, a wide variation in the number and size of tree rings, and so on.

---

[9] Another procedural use for Rule 23 permits a court to certify a class for settlement purposes only.  *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995) ("[A] settlement class is a device whereby the court postpones the formal certification procedure until the parties have successfully negotiated a settlement, thus allowing a defendant to explore settlement without conceding any of its arguments against certification.").

[10] *See, e.g.*, Syl. pt. 2, *State ex rel. Metro. Life Ins. Co. v. Starcher*, 196 W. Va. 519, 474 S.E.2d 186 (1996) ("To demonstrate the existence of a class pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, it is not required that each class member be identified, but only that the class can be objectively defined.  It is not a proper objection to certification that the class as defined may include some members who do not have claims because certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses toward resolution on the merits.").

The test for the judge, though, is to step back and look at the similarities in class members. Step back and see the forest. No matter the number of branches or leaves, a collection of oak trees has enough similarities to be called a "class" of oak trees. So, on remand, the judge in the instant case should do the same: focus on the class members and find their similarities.

*Surnaik Holdings*, 244 W. Va. at 272, 852 S.E.2d at 772 (quoting *Gulas v. Infocision Mgmt. Corp.*, 215 W. Va. 225, 230, 599 S.E.2d 648, 653 (2004) (Starcher, J., concurring)).

Finally, let me address the Court's decision to grant a writ of prohibition in this case. In recent years, this Court has granted several writs of prohibition halting class certification rulings after assessing that the judges had failed to complete a "thorough" or "rigorous" Rule 23 analysis.[11] The Court granted a writ in this case for the same reason.

"It is a paramount principle of jurisprudence that a court speaks only through its orders." *Legg v. Felinton*, 219 W.Va. 478, 483, 637 S.E.2d 576, 581 (2006). Judges should, of course, employ precision and clarity in any order. What the Court's ruling, in this case and the others, really means when it uses words like "thorough" or "rigorous" is

---

[11] *See, e.g.*, *State ex rel. W. Va. Univ. Hosps. - E., Inc. v. Hammer*, 866 S.E.2d 187, 202 (W. Va. 2021) ("[W]e find the circuit court's order fails to provide the 'thorough analysis' required[.]"); *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 263, 852 S.E.2d 748, 764 (2020) ("[T]he circuit court has exceeded its legitimate powers by certifying the class while failing to undertake a thorough analysis[.]"); *State ex rel. Mun. Water Works v. Swope*, 242 W. Va. 258, 267, 835 S.E.2d 122, 131 (2019) ("[T]he circuit court's order did not contain a thorough analysis of the Rule 23(a) factors[.]"); *State ex rel. W. Va. Univ. Hosps., Inc. v. Gaujot,* 242 W. Va. 54, 64, 829 S.E.2d 54, 64 (2019) ("[T]he circuit court has exceeded its legitimate powers by certifying the class while failing to conduct a sufficiently thorough analysis of the case[.]").

14

this: when ruling on a Rule 23 class certification motion, a judge must enter an order with substantial detail that explains the judge's reasoning. Whether the judge is granting or denying class certification, the judge is speaking to a broad audience, one far broader than a typical case. The order in a class action is a historical record. It speaks not only to the litigants, but also speaks to untold numbers of as-yet unidentified, prospective class members. Because of the potential breadth of relief that stands to be imposed by the judge's rulings, and because many defendants in a class action are large, incorporated businesses, the order also speaks to distant corporate officers, employees, stockholders, investors or insurers. Plus, the *res judicata* effect of the class action on its wide-ranging audience must be clear. Any reader of the judge's certification order should know the step-by-step basis for the certification decision, such that the decision provides clear guidance to the broad audience likely to review the judge's reasoning.

Rule 23 is a magnificent tool for managing complex cases, and while class actions sometimes take a little more elbow grease, they are capable of affording justice for more people than can individual lawsuits. A clear and detailed order on certification questions assures the judge, the litigants, and other observers that consideration has been given to every argument of the parties and every element of the rule.

Hence, I concur with the Court's decision to grant a writ of prohibition to afford the circuit judge an opportunity to craft a more detailed order explaining why a class action is the superior method and why the questions raised by the plaintiffs are predominant.