637 S.E.2d 576

Captain Earl F. LEGG, Jr., Plaintiff
Below, Appellee,

v.

Mayor David A. FELINTON, and the City
of Huntington, West Virginia, and the
City of Huntington, West Virginia Fire-
fighter's Civil Service Commission, De-
fendants Below, Appellants.

No. 33044.

Supreme Court of Appeals of
West Virginia.

Submitted: Sept. 13, 2006.

Decided: Oct. 5, 2006.

**480**

Scott E. McClure, Christopher Dean, Huntington, for the Appellants.

J. Roger Smith, II, Tyler B. Smith, Huntington, for the Appellee.

PER CURIAM.

This is an appeal by the City of Huntington (hereinafter " 'City) from an order of the Circuit Court of Cabell County reversing a decision of the Firemen's Civil Service Commission (hereinafter 'Commission') which upheld the City's suspension of Captain Earl F. Legg, Jr., (hereinafter 'Appellee' ") based upon a drug test conducted upon the Appellee. The City seeks reversal of the circuit court's order and a reinstatement of the Commission's decision permitting the City to terminate the Appellee's employment. Upon thorough review of the briefs, record, arguments of counsel, and applicable precedent, this Court reverses the decision of the circuit court and reinstates the decision of the Firemen's Civil Service Commission.

I. Factual and Procedural History

On April 10, 2004, Huntington firefighter Michael Giannini, co-worker of the Appellee, was arrested for possession of crack cocaine. In subsequent discussions among Mr. Giannini, his girlfriend, and Deputy Chief Jerry Beckett, the Appellee was implicated in the smoking of crack cocaine and the consumption of beer while on duty. Upon learning of the Appellee's alleged involvement in such practices, Chief Greg Fuller determined that the Appellee should be asked to take a reasonable suspicion drug test. Chief Fuller based this decision upon the information provided by Mr. Giannini and his girlfriend; the Appellee's September 2002 charge of driving under the influence; the Appellee's pattern of sick leave usage; and an alteration in personality of the Appellee which had been observed by individuals who worked with him.[1]

Further, Chief Fuller premised his decision to test the Appellee upon the provisions of Policy 19(J) of the City of Huntington's Policy and Procedure Manual, permitting the City to request employees to submit to a reasonable suspicion drug screening if the charging officer feels that the employee has exhibited behavior which may be consistent with illegal drug use. Specifically, reasonable suspicion testing is defined as follows by Policy 19(J):

> Reasonable suspicion for requiring an employee to submit to drug and/or alcohol testing shall be deemed to exist when an employee manifests physical or behavioral symptoms or reactions commonly attributed to the use of controlled substances or alcohol. Such employee conduct must be witnessed by at least one supervisor trained in compliance with the City's Drug–Free Workplace Policy. Should a supervisor observe such symptoms or reaction, the employee must submit to testing.

Pursuant to Chief Fuller's request, the Appellee submitted to a drug test.[2] Dr. Ernest Raba, the Medical Review Officer for Corporate Support Systems, Inc., reviewed the results of the urine sample and determined that the sample provided by the Appellee had the characteristics of water rather than human urine. Thus, the sample was characterized as a "Substituted–Refusal to Test." A second laboratory test confirmed

---

1. Chief Fuller testified as follows:

   There was some uncharacteristic behavior, the DUI, which was uncharacteristic for Captain Legg, the pattern of sick leave usage, the nervousness and agitation, the irritability, and a general— I would characterize as a general change in personality. And coupling that with this report [from Giannini and his girlfriend], I felt that there was not only clear reasonable suspicion to have Captain Legg tested, but I felt like I had an obligation and a custodial duty to do so.

2. When Chief Fuller addressed the issue of the screening test with the Appellee, the information received from Mr. Giannini and his girlfriend was discussed. Additionally, the attendance issues and unusual behavior patterns were discussed as justification for the drug screening. The Appellee thereafter exited the Chief's company for approximately ten minutes prior to traveling to the laboratory where the urine sample was taken.

this conclusion.[3] Policy 19(J) defines "refusal to test" as "conduct that would obstruct the proper administration of a test." Further, the policy provides that an employee engaging in prohibited conduct shall be subject to termination of employment.

On April 22, 2004, Chief Fuller suspended the Appellee from duty without pay due to the "refusal to test" and based upon exigent circumstances related to safety concerns of drug usage by a firefighter. On July 14, 2004, a hearing board composed of three of the Appellee's fellow firefighters determined that Chief Fuller lacked reasonable suspicion to require the Appellee to submit to a drug test under the provisions of Policy 19(J). The City appealed that decision to the Firemen's Civil Service Commission. By order dated February 17, 2005, the Commission found reasonable suspicion justifying the drug testing and exigent circumstances justifying the suspension of the Appellee without pay pending termination.

Upon the Appellee's appeal to the Circuit Court of Cabell County, the Commission's decision was reversed. The City now appeals to this Court.

## II. Standard of Review

In the syllabus of *Billings v. Civil Service Commission*, 154 W.Va. 688, 178 S.E.2d 801 (1971), this Court stated that "[a] final order of the Civil Service Commission based upon a finding of fact will not be reversed by this Court upon appeal unless it is clearly wrong." This Court has also held that this standard is applicable to a circuit court's review of an administrative agency such as the Firemen's Civil Service Commission. In syllabus point one of *Appeal of Prezkop*, 154 W.Va. 759, 179 S.E.2d 331 (1971), this Court held that "[a] final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law."

In *In re Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996), we further explained this

standard of review in an appeal involving a decision of the Correctional Officers' Civil Service Commission. In *Queen*, we stated that "[o]ur review of the circuit court's decision made in view of the Commission's action is generally *de novo*. Thus, we review the Commission's adjudicative decision from the same position as the circuit court." 196 W.Va. at 446, 473 S.E.2d at 487. In syllabus point one of *Queen*, this Court stated:

> An adjudicative decision of the Correctional Officers' Civil Service Commission should not be overturned by an appellate court unless it was clearly erroneous, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Review under this standard is narrow and the reviewing court looks to the Civil Service Commission's action to determine whether the record reveals that a substantial and rational basis exists for its decision.

In syllabus point two of *Queen*, this Court continued as follows:

> An appellate court may reverse a decision of the Correctional Officers' Civil Service Commission as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered one that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.

*See also Collins v. City of Bridgeport*, 206 W.Va. 467, 472, 525 S.E.2d 658, 663 (1999). Utilizing these standards for our review, we address the issues presently before this Court.

## III. Discussion

### A. Reasonable Suspicion to Test

The Firemen's Civil Service Commission found that reasonable suspicion existed to require drug testing of the Appellee. Specifically, the Commission cited the testimony

---

3. The urine provided by the Appellee was actually divided into two samples which were tested separately. Both tests revealed the same results. The urine sample had a creatinine level of less than one. According to analysts, such creatinine level indicated that the sample had the qualities of water and could not be considered human urine.

of Chief Fuller, Deputy Chief Beckett, and Deputy Chief Tim Provaznik, all explaining that the actions and behaviors of the Appellee were consistent with illicit drug usage. Each of these individuals had been trained and certified in the City's Drug–Free Workplace Policy.

In testimony presented to the Commission, the Appellee's charge of driving under the influence of alcohol was discussed as a potential indicator of dependence problems. Additionally, Deputy Chief Provaznik stated that the Appellee had utilized a substantial amount of excused and unexcused sick leave, a usage pattern which was perceived as uncharacteristic for the Appellee. Deputy Chief Provaznik further testified that excessive absenteeism is one of the factors to be evaluated in determining whether a reasonable suspicion test should be conducted. Deputy Chief Beckett explained that he suspected that the Appellee was using illegal drugs based upon information received from Mr. Giannini and his girlfriend, as well as the DUI, excessive absenteeism, and a change in personality.

On appeal of this matter to the circuit court, the Commission's decision was reversed. In the circuit court order, the standard to be employed in the determination of whether to require an employee drug test was improperly identified as "exigent circumstances." The appropriate standard, explicitly stated in Policy 19(J) and properly employed by the Commission, is "reasonable suspicion." [4]

Utilizing the exigent circumstances standard, the circuit court determined as follows: "The Court does not agree with the position of the Defendants that exigent circumstances existed on April 18, 2004 so as to allow the City of Huntington, through Fire Chief Fuller, to request a reasonable suspicion drug test . . . ." The circuit court's order is replete with such references to the absence of "exigent circumstances."

Furthermore, the circuit court relied upon the fact that no symptoms commonly attributed to the use of controlled substances were observed *on the day of* the drug testing. The circuit court reasoned that if "exigent circumstances" existed, "the City would not have waited four days to request that Captain Legg [the Appellee] take a reasonable suspicion drug test . . . ." A review of the policy, however, reveals no requirement that the behaviors, symptoms, or actions justifying testing actually occur *on the day of* testing. Thus, the circuit court introduced and relied upon a requirement which does not exist.

As explained above, the circuit court's standard of review of the Commission's order is limited. Even assuming that the circuit court inadvertently identified the standard as exigent circumstances when in fact the court was correctly evaluating the issue under the standard of reasonable suspicion to test, this Court finds that the circuit court erred in reversing the Commission's finding of reasonable suspicion to test. The Commission based it conclusions upon extensive testimony and evidence presented during the hearing. This Court fails to perceive any defect in the Commission's conclusion that could be characterized as clearly erroneous, arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Review of the record clearly indicates that a substantial and rational basis exists for the Commission's decision with regard to the reasonable suspicion to test the Appellee.

### B. Exigent Circumstances Justifying Punitive Action Prior to Hearing

■ West Virginia Code § 8–14A–3(b) (1997) (Repl.Vol.2003), addresses the requirements for a hearing where a civil service officer faces punitive action and provides as follows:

> When a civil service accused officer faces a recommended punitive action of discharge, suspension or reduction in rank or pay, but before such punitive action is taken, a hearing board must be appointed and must afford the accused civil service officer a hearing conducted pursuant to the provisions of article fourteen, section twen-

---

4. The exigent circumstances standard, as discussed in the following section of this opinion, is to be applied in the determination of whether the employee can be subjected to punitive action without a hearing.

ty [§ 8–14–20], or article fifteen, section twenty-five [§ 8–15–25] of this chapter: Provided, That the **punitive action may be taken before the hearing board conducts the hearing if exigent circumstances exist which require it.**

W. Va.Code § 8–14A–3(b) (emphasis provided). In *Alden v. Harpers Ferry Police Civil Service Commission,* 209 W.Va. 83, 543 S.E.2d 364 (2001), this Court held that the express language of West Virginia Code § 8–14A–3(b) requires a predisciplinary hearing *unless* exigent circumstances exist to preclude such a proceeding. Specifically, this Court explained as follows in syllabus point four of *Alden:*

> W.Va.Code § 8–14A–3(b) (1997) (Repl. Vol.1998) requires that, before a civil service officer may be disciplined through discharge, suspension, or reduction in rank or pay, he/she must be afforded a predisciplinary hearing before a hearing board unless there exist exigent circumstances that require the recommended disciplinary action to precede such hearing. To the extent our prior decision in the Syllabus of *City of Huntington v. Black,* 187 W.Va. 675, 421 S.E.2d 58 (1992), is inconsistent with this holding, it is hereby expressly modified.

■ In addressing this issue of exigent circumstances in the present case, the Commission found that exigent circumstances existed to justify punitive action prior to conducting a hearing, based upon public safety concerns. On appeal, the circuit court essentially bypassed this issue by finding that the Appellee did not refuse to test and therefore should not have been suspended or terminated. The circuit court based its conclusion upon its interpretation of the Commission's findings, reasoning that the Commission was "unable to conclude that the urine sample as submitted by the Plaintiff was adulterated or what happened to it. . . ."

A review of the Commission's order, however, indicates the miscalculation in the circuit court's reasoning. During the hearing, members of the Commission did engage in discussion concerning the possible causes for the laboratory results of the urine testing. Commissioner Bagley explained that the Commissioners had

great concern about the fire fighters and the dangers of any sort of drug use or alcohol use while on duty. And we certainly don't want any of that sort of thing happening in the Huntington Fire Department. But at the same time, we know that there is a human factor about these things and that mistakes can happen, but we don't know what happened to this specimen that was given. We don't know whether it was adulterated or what happened to it.

The possibility of hair follicle testing was thereafter discussed, and it was ultimately determined that the Commission would rule once the record was prepared and reviewed. In the written decision rendered on February 17, 2005, the Commission specifically stated its ultimate finding that the Appellee "did violate Policy 19(J) of the City of Huntington's Policy and Procedure Manual. Policy 19(J) prohibits conduct that would obstruct the proper administration of the test. The Commission finds that the accused officer, by substituting his urine sample as testified to by Dr. Raba, has engaged in such conduct."

■ It is a paramount principle of jurisprudence that a court speaks only through its orders. *See State v. White,* 188 W.Va. 534, 536 n. 2, 425 S.E.2d 210, 212 n. 2 (1992) ("[H]aving held that a court speaks through its orders, we are left to decide this case within the parameters of the circuit court's order." (citations omitted)); *State ex rel. Erlewine v. Thompson,* 156 W.Va. 714, 718, 207 S.E.2d 105, 107 (1973) ("A court of record speaks only through its orders[.]" (citations omitted)). This principle has been relied upon where conflicting signals are presented by a circuit court. *State ex rel. Kaufman v. Zakaib,* 207 W.Va. 662, 671, 535 S.E.2d 727, 736 (2000). In *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 459 S.E.2d 374 (1995), this Court explained the proper approach as follows:

> As an initial matter, it is clear that where a circuit court's written order conflicts with its oral statement, the written order controls. Therefore, "we are left to decide this case within the parameters of the circuit court's order." *State v. White,*

188 W.Va. 534, 536 n. 2, 425 S.E.2d 210, 212 n. 2 (1992). *See also Harvey v. Harvey*, 171 W.Va. 237, 241, 298 S.E.2d 467, 471 (1982) ("[t]hat a court of record speaks only through its records or orders has been generally affirmed by this Court in subsequent cases"). Considering the above authority, we believe it is necessary to give greater credence to the circuit court's order. Thus, we find in this case that the defendants' concerns of the difference between the circuit court's ruling from the bench and the subsequent written order have no merit.

194 W.Va. at 107 n. 5, 459 S.E.2d at 384 n. 5.

In the circumstances of this case, we believe these principles regarding judicial proceedings should be applied to the administrative proceeding before us here. Since there is no dispute about the content of the record made before the Firemen's Civil Service Commission, we believe it is appropriate to rely upon the findings of the Commission as reflected by its final order, rather than to base our judgement on one short passage taken from the record that appears to run counter to the Commission's clearly expressed findings and conclusions. Thus, this Court should rely on the Commission's order in examining the soundness of its reasoning. Prior hypothetical discussion notwithstanding, the Commission explicitly states the finding in its written order that the Appellee violated Policy 19(J) by substituting his urine sample. Consequently, we find no basis for the circuit court's conclusion that the Commission's ruling was flawed in that regard.

The Commission's order regarding the existence of exigent circumstances justifying punitive action prior to a hearing must stand. Safety issues have consistently been identified as paramount concerns where an employee is possibly using illicit drugs. *See Twigg v. Hercules Corp.*, 185 W.Va. 155, 158, 406 S.E.2d 52, 55 (1990) (holding that drug testing is not violative of public policy where job responsibility involves public safety or the safety of others). Furthermore, safety issues have also been identified as primary considerations in evaluating the issue of whether exigent circumstances exist. In *State ex rel. Sweikert v. Briare*, 94 Nev. 752,

588 P.2d 542 (1978), for instance, the Nevada court held that the danger to the public from structural and fire hazards resulting from a casino remodeling project improperly approved by a building inspector were sufficient exigent circumstances to warrant the immediate termination of the inspector. 588 P.2d at 544. Likewise, in *Bowie v. City of Jackson Police Department*, 816 So.2d 1012 (Miss.App.2002), the court explained that "extraordinary circumstances" warranted an exception to procedural due process requirements where a police officer was suspended without pay. 816 So.2d at 1016. The court found that the officer's use of excessive force in an arrest indicated that his continued employment would result in injury to the public or to private citizens. *Id.*

In the present case, Chief Fuller testified that the safety of other firefighters, as well as citizens of the City of Huntington, would be endangered by the continued employment of the Appellee. In discussing the exigent circumstances standard, Chief Fuller explained that "[i]t means an emergency, something urgent, you have to take action to prevent further damage or loss of property and life." Chief Fuller further elaborated as follows:

Captain Legg is not only a fire fighter, he is also a fire officer. As such, he's responsible for the lives and property of the citizens in his district and sometimes throughout the whole city. He's also responsible for the safety of the fire fighters under his command.

A fire fighter has great latitude statutorily locally by ordinance. A fire officer has access to ... keys which give access to drugstores, banks, all nature of businesses.

The duties of a fire fighter involve— are very physical. They involve life and death decisions. To have a fire fighter that may be under the influence of a substance performing these types of duties to me constitutes an exigent circumstance.

This Court holds that the evidence was sufficient to support the determinations of the Commission regarding the existence of exigent circumstances. There is no indication that any of the Commission's findings were clearly wrong, based upon mistake of

law, arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Consequently, we find that the circuit court improperly reversed the decision of the Commission. The order of the Circuit Court of Cabell County is reversed. We direct that the order of the Commission be reinstated.

Reversed