STATE OF WEST VIRGINIA

*In re* A.L.

No. 19-0646 (Mineral County 18-JA-5)

FILED
April 6, 2020
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father L.L., by counsel Ramon Rozas III, appeals the Circuit Court of Mineral County's June 7, 2019, order terminating his parental rights to A.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Kelley A. Kuhn, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in permitting his service by publication and finding that petitioner abandoned the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2018, the DHHR filed an abuse and neglect petition against the mother and her partner alleging that they physically and emotionally abused the child. Although the family had recently moved from Maryland, the DHHR alleged that the circuit court had jurisdiction because the child had lived in Mineral County, West Virginia, for the preceding six months. The DHHR also alleged that petitioner was the father of the child, but noted that his location was unknown. As of the mother's adjudicatory hearing in March of 2018, petitioner had not appeared at any hearings, but counsel represented him. In November of 2018, the circuit court found that the mother failed to complete her improvement period and terminated her parental rights.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The DHHR moved to terminate petitioner's parental rights based upon abandonment in December of 2018. The circuit court instructed the DHHR to file an amended petition alleging abandonment and authorized service upon petitioner by way of publication. On March 16, 2019, petitioner's counsel filed a motion to dismiss for lack of personal jurisdiction. On May 31, 2019, the DHHR filed an amended petition alleging that petitioner abandoned the child, his address was unknown, and the DHHR had served him notice by publication.

In June of 2019, the circuit court first held an adjudicatory hearing, and then went forward with a dispositional hearing. Petitioner did not appear, but counsel represented him. The circuit court heard petitioner's arguments in support of his motion to dismiss, but denied the same. The DHHR worker testified that she neither knew where petitioner lived nor whether he knew of the child's existence or whereabouts. She further testified that she tried to locate petitioner's address through the Maryland Department of Social Services, child support databases, and social media sites, but she was unsuccessful. She also testified that the mother did not provide any information regarding petitioner's whereabouts. The DHHR provided the circuit court with proof of publication in a local newspaper in Mineral County, West Virginia. The DHHR argued in favor of terminating petitioner's parental rights based upon abandonment and noted that the parents' parental rights to other children in Maryland had also been terminated. Ultimately, the circuit court found that the child had never met petitioner, whose whereabouts were unknown, and petitioner had abandoned the child. The circuit court noted that petitioner never appeared for any hearing and had not contacted the DHHR. Further, the circuit court found that the DHHR made reasonable efforts to locate petitioner and effected proper service upon him by publication. Ultimately, the circuit court terminated petitioner's parental rights by order entered on June 7, 2019. It is from the dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The mother's parental rights were also terminated. The permanency plan for the child is adoption in her current foster home.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in relying upon West Virginia Code § 49-4-601(e)(4) to provide service, notice, and jurisdiction over petitioner because the circuit court had no personal jurisdiction over him as he had no minimum contacts with the State of West Virginia.[3] Further, petitioner argues that the notice provisions of West Virginia Code § 59-3-1(b), which required service by publication in a "qualified newspaper" in Mineral County, West Virginia, was not "reasonably calculated, under all circumstances, to apprise" petitioner of the child abuse and neglect proceedings. We disagree and find petitioner's arguments without merit.

Petitioner concedes that the circuit court had proper subject matter jurisdiction over the child in Mineral County, West Virginia. However, petitioner's contention that the circuit court lacked personal jurisdiction over him has no bearing on the circuit court's authority to determine a child's custody, which by its nature may include the adjudication of a parent's parental rights. Under the West Virginia Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), West Virginia was the "home state" for the child in this matter as she had lived in West Virginia for the preceding six months. *See* W. Va. Code § 48-20-102(g) ("'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding."); *In re J.C.*, 242 W. Va. 165, --, 832 S.E.2d 91, 97 (2019) ("Pursuant to W. Va. Code § 48-20-201(a)(1), a circuit court has subject matter jurisdiction under the UCCJEA if West Virginia is the 'home state' of the child when an abuse and neglect petition was filed."). After making an initial custody determination, the circuit court has "exclusive, continuing jurisdiction." W. Va. Code § 48-20-202. Finally, pursuant to the UCCJEA, "[p]hysical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination." *Id.* at § 48-20-201(c). On appeal, petitioner fails to attack the validity of the UCCJEA and ignores the Court's holding in *In re J.C.*, which found that child abuse and neglect proceedings fall within the UCCJEA's definition of a "child custody proceeding." *J.C.*, 242 W. Va. at --, 832 S.E.2d at 96. Moreover, we have held that

> [i]f a circuit court in this State acquires jurisdiction to award custody of a child under the Uniform Child Custody Jurisdiction [Enforcement] Act, [West Virginia Code § 48-20-101 et seq.], it may make such custody determination notwithstanding the fact that personal jurisdiction was not acquired over a parent who is absent from the State, and such adjudication does not violate the absent party's due process rights if the notice provisions of the Act have been complied with.

---

[3]West Virginia Code §49-4-601(e)(4) provides that "[i]f service cannot be obtained by personal service or by certified mail, notice shall be by publication as a Class II legal advertisement in compliance with § 59-3-1 *et seq*. of this code." Further, West Virginia Code § 59-3-1(a)(1) and (b) provides, in relevant part, that a "legal advertisement" must be published in a "qualified newspaper" in "the State of West Virginia."

Syl., *McAtee v. McAtee*, 174 W. Va. 129, 323 S.E.2d 611 (1984). Notably, the notice provisions of the UCCJEA are like those in West Virginia Code § 49-4-601(e)(4) in that they permit notice by publication, and petitioner does not contend that the DHHR did not comply with the required notice provisions.[4] According to the record, the DHHR attempted to locate petitioner through various means and, after due diligence, was unable to locate him. Because actual notice upon petitioner was impossible, the DHHR's notice by publication was proper pursuant to the UCCJEA and West Virginia Code § 49-4-601(e)(4). Accordingly, as the notice provisions of the UCCJEA were satisfied, petitioner's due process rights were not violated.

Next, petitioner argues that the circuit court erred in finding that he "unintentionally" abandoned the child and argues that "West Virginia law requires that parental abandonment be intentional." However, petitioner's argument misrepresents the circuit court's finding at the dispositional hearing that, "[petitioner has] abandoned [the child]; and I am—maybe not voluntarily; he may not even know. I don't know the answer to that, but . . . I'm terminating his parental rights." We have held that

> [i]t is a paramount principle of jurisprudence that a court speaks only through its orders. *See State v. White,* 188 W.Va. 534, 536 n. 2, 425 S.E.2d 210, 212 n. 2 (1992) ("[H]aving held that a court speaks through its orders, we are left to decide this case within the parameters of the circuit court's order." (citations omitted)); *State ex rel. Erlewine v. Thompson,* 156 W.Va. 714, 718, 207 S.E.2d 105, 107 (1973).

*Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006). Here, the circuit court did not make a finding that petitioner "unintentionally" abandoned the child in its dispositional order. Rather, the circuit court clearly found that petitioner abandoned the child. "'Abandonment' means any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child." W. Va. Code § 49-1-201.[5] Here, the DHHR presented evidence that established that petitioner never provided any support for the child in any way and

---

[4]West Virginia Code § 48-20-108(a) provides,

> [n]otice required for the exercise of jurisdiction when a person is outside this state may be given in a manner prescribed by the law of this state for service of process or by the law of the state in which the service is made. *Notice must be given in a manner reasonably calculated to give actual notice but may be by publication if other means are not effective.*

(Emphasis added).

[5]On appeal, petitioner cites an inapplicable statute, West Virginia Code § 48-22-306, which requires the parent to have knowledge of the child's whereabouts "in the domestic law context." No such equivalent exists in the definition of abandonment in child abuse and neglect proceedings. Accordingly, the definition petitioner cites entitles him to no relief.

was never present in her life. Petitioner's apparent complete abdication of parental duties to a ten-year-old child is conduct that demonstrates the settled purpose to forego parental duties and responsibilities. Accordingly, we find no error.

We likewise find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that a parent's parental rights may be terminated upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and when termination is "necessary for the welfare of the child." West Virginia Code § 49-4-604(c)(4) clearly provides that such circumstances exist when "[t]he abusing parent or parents have abandoned the child," as is the case here. Notably, petitioner does not challenge the circuit court's finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." As noted above, the evidence supports a finding of abandonment because there is no indication that petitioner was ever involved in the child's life or supported her in any way. As such, it is clear there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental rights was necessary for the child's welfare. In conclusion, we find no error in the circuit court's termination of petitioner's parental rights.

Accordingly, the circuit court's June 7, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5