# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0250** (Hancock County Nos. 20-F-15 and 20-F-59)

**Ty Mogyoros,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Ty Mogyoros, by counsel Gary A. Collias, appeals the Circuit Court of Hancock County's February 22, 2021, plea and sentencing order entered following his convictions of fleeing while driving under the influence, driving under the influence, and reckless fleeing. Respondent State of West Virginia, by counsel Patrick Morrisey and William E. Longwell, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 26, 2019, Weirton Police Officer Joseph DeStefano and West Virginia State Trooper Michael Hoder responded to a Dollar General store in Hancock County, West Virginia, following a report of a male possibly overdosing behind the wheel of a black Jeep Liberty in the store's parking lot. No one was in the Jeep when the officers arrived. The officers ran the license plate on the Jeep and determined that it belonged to a different vehicle owned by petitioner. After concluding that the Jeep was not stolen, the officers removed the plate and waited for approximately thirty minutes for the driver/owner to return. No one returned to the Jeep, so the officers left.

Later in the day, Trooper Hoder was still in the vicinity of the Dollar General when the black Jeep Liberty passed him. Trooper Hoder attempted to initiate a stop, but the Jeep fled. Trooper Hoder pursued the Jeep into Pennsylvania and back into Brooke County, West Virginia, where the Jeep was successfully stopped. Petitioner was arrested, transported to the Weirton Police Department, and administered field sobriety tests, which he failed.

Petitioner was indicted in January of 2020 on one count each of fleeing while driving under the influence ("DUI"); DUI; reckless fleeing; grand larceny; and driving while license/privilege revoked due to a DUI, third or subsequent offense. The first three charges—the only charges at issue in this appeal—stemmed from the incident described above. The remaining charges were alleged to have occurred months later and were severed from the charges at issue here.[1]

Petitioner moved to suppress "any and all statements [he] made," alleging that Trooper Hoder interrogated him without advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The State requested specification of the statements petitioner sought to suppress. Petitioner explained that, based upon the times reflected on the DUI Information Sheet indicating when he was advised of his rights under *Miranda* and when he finished answering "forty-three separate questions," only nine minutes elapsed, which "would not be enough time for the list of questions to be asked, answered, and reviewed by an allegedly intoxicated person in a manner consistent with a knowing and voluntary statement." Petitioner also asserted that there was information included in an accompanying narrative that was not included in the list of questions asked, suggesting that

> the custodial interrogation took place prior to the Miranda waiver being signed and with the interview sheet being a memorialization of parts of this earlier interview. Alternatively, there were two interviews, and West Virginia has yet to join the jurisdictions that allow a subsequent Mirandized statement to cure an earlier statement obtained in violation of Miranda much less specify the level of scrutiny to be given such a subsequent waiver and statement.

At the September 30, 2020, hearing on petitioner's motion to suppress, the court expressed some confusion over the basis of the motion. Petitioner explained that his statements to the police should be suppressed because

> the police report doesn't mention Miranda, and there are timing issues involved as to when they were given and if he was interviewed pre-Miranda, but also the timing as to how long it took to do all of this we believe calls into question whether it was voluntary and whether he actually did give a second statement.

Petitioner also agreed with the court's recitation that

> it appears that the defendant was generally alleging that there were some statements that he may have given after he was taken into custody that were not

---

[1] These charges were assigned Case No. 20-F-15. Petitioner was indicted separately, in Case No. 20-F-59, on one count of driving while license/privilege revoked due to a DUI, third or subsequent offense; entry of a building other than a dwelling; and DUI. These latter charges were resolved by plea agreement and are mentioned here only because the order on appeal is a joint plea and sentencing order addressing both Case Nos. 20-F-15 and 20-F-59. Petitioner makes clear that "[n]o issue raised in this appeal relates in any way to Case Number 20-F-59."

knowing and voluntary because either Miranda was not given or maybe that he didn't understand his Miranda rights if they were given to him.

But after further discussion, the court said, "Well, to me his motion is not clear because I don't think he's clear exactly." And after further explanation from petitioner, the court asked the State, "[D]oes that make it muddier or clearer for you[?]" The State responded, "Muddier." The State proposed calling petitioner to "find out if he's saying that there was an interview beforehand or if he's alleging that this trooper interviewed him while he was in custody prior to reading him his Miranda rights." The court said that petitioner "doesn't have to testify" but that the State "can call him." The court indicated that it "underst[oo]d the issue now" and stated that "the motion has been made, and the [S]tate has to prove by a preponderance of the evidence that the statements made on the Report of Criminal Investigation were knowing and voluntary, and the same on the West Virginia DUI Information Sheet. Otherwise they don't come in."[2]

The State called petitioner to the stand. Petitioner stated that he would not be testifying and asserted his Fifth Amendment privilege against self-incrimination. The State questioned whether "the Fifth Amendment appl[ies] to suppression hearings?" The State indicated that petitioner's "words and statements can't be used against him at trial unless he chooses to testify differently than how he testifies at this suppression hearing. . . . His testimony can't be introduced by the [S]tate unless he chooses to testify inconsistently." Petitioner continued to assert his Fifth Amendment privilege.

Trooper Hoder testified that petitioner "was immediately placed in custody once we removed him from the vehicle, and everything that happened between me and him as far as conversation-wise happened after arrest." Petitioner was then "immediately" transported to the Weirton Police Department so that the trooper could safely conduct field sobriety tests there rather than "in the middle of U.S. 22." The trooper testified that petitioner

> was Mirandized on the side of the road. . . . As far as questioning, from the time I transported him to Weirton PD and the field sobrieties were conducted, I didn't do any formal interview with him. It was just me and him talking between field sobriety tests and transporting him. There was no interview conducted.

Then, once Trooper Hoder "came to the conclusion that [petitioner] was under the influence after the field sobriety tests, I then started my DUI Information Sheet, the DMV-314. And the first two things I do when I start my DUI process after the field sobrieties is the implied consent and Miranda warnings." According to the trooper, petitioner "acknowledge[d] that he understood" his *Miranda* rights and signed a form confirming his comprehension. On cross-examination,

---

[2] The court also announced at a point during petitioner's attempts to clarify the basis of his motion to suppress that the State bore the burden: "The [S]tate has the burden of showing knowing and voluntary confessions," and "that needs to be proven by the [S]tate by a preponderance of the evidence to be a—again, assuming he was in custody as it indicates up above, whether they were knowing and voluntarily provided."

Trooper Hoder reiterated that he did not interview petitioner before informing him of his *Miranda* rights.

After the parties completed their examination of Trooper Hoder, the court asked, "Just to be clear, Trooper, are you saying that you recall, specifically recall in this case giving him his *Miranda* warnings when you put him in custody and cuffed him on U.S. 22?" Trooper Hoder responded, "Yes, sir, I do remember."

Following the trooper's testimony, the court verified that petitioner "does not wish to testify, correct." Petitioner repeated that he did not, and the court ruled, "Well, based on that and without hearing the defendant's testimony, this all comes in as knowing and voluntary."

In its written order, the court recounted that

[a]ccording to the Trooper, the statements in question were all given by the [petitioner] ***after*** the [petitioner] was given his *Miranda* warnings and after he signed documents indicating that he understood his rights. Trooper Hoder testified that, at all times relevant, the defendant appeared to be mentally competent to receive, understand, and waive his rights. The defense was unable to satisfactorily refute the testimony of the Trooper through cross examination.

The court further recounted that petitioner

was given an opportunity to testify if he chose to . . . [and] was instructed that any testimony he might give would be limited to the voluntariness of the statements he gave to the police . . . [and] that his testimony would not and could not be used against him at this trial, unless it was in direct rebuttal to something inconsistent that he might have said on direct exam if he chose to testify at trial.

Petitioner, though, "chose to not testify at the suppression hearing," and petitioner "did not offer any testimony from any other witness for the [c]ourt to consider." The court found that petitioner was advised of his *Miranda* rights in proper form and substance, that "the unrebutted and uncontested testimony presented by the State sufficiently satisfies its burden that *Miranda* warnings were understood by the [petitioner]," and that "the uncontested testimony likewise demonstrated [petitioner's] waiver of said rights by his willingness to freely speak with law enforcement without threat or coercion." Therefore, petitioner's motion to suppress was denied.

Petitioner's two-day trial began on October 6, 2020. Officer DeStefano and Trooper Hoder testified for the State. Officer DeStefano testified to his receipt of a report of a possible overdose, his actions in determining that the license plate on the black Jeep Liberty did not belong to the Jeep, his confirmation that the Jeep was not stolen, and his removal of the license plate from the Jeep. It was the officer's recollection that the license plate belonged to petitioner.

Officer DeStefano also testified that he became involved with the Jeep later in the day following a pursuit. "On U.S. 22 the subject was taken into custody at that point whenever I got on scene." Officer DeStefano identified petitioner as "the subject" who was taken into custody,

4

and he confirmed that the vehicle petitioner was driving when he was taken into custody was the same one Officer DeStefano saw earlier in the day at Dollar General.

Trooper Hoder corroborated Officer DeStefano's testimony regarding the events that transpired at Dollar General, and he confirmed that the license plate and Jeep belonged to petitioner but that the license plate did not belong on the Jeep. Trooper Hoder also testified that, later in the day, in the vicinity of the Dollar General, he had additional contact with the Jeep Liberty, which he knew was the Jeep from earlier because he "observed the vehicle at the Dollar General, and as it passed me I observed it to be the same vehicle also without the registration plate as well." Trooper Hoder attempted to initiate a stop by activating his lights. Once the trooper activated his lights, "the black Jeep Liberty proceeded to pass in the no passing [zone], passed the vehicle that was in front of him. That's when I activated my siren, and the black Jeep Liberty continued to run." The driver of the Jeep did not pull over, and the pursuit lasted "approximately [thirty] minutes." Trooper Hoder described that the pursuit involved travel "on North 12th to Kings Creek to North Fork Road, Swearingen Hill to Wiley Ridge to Standish Hill into Pennsylvania, which we eventually ended upon Route 18 in Pennsylvania." Petitioner did not obey the traffic laws of West Virginia during this pursuit, and he operated the Jeep "in a very reckless manner."

Trooper Hoder followed the Jeep into Pennsylvania, and once the driver of the Jeep "hit Route 18 in Pennsylvania I actually discontinued the pursuit and I started back towards U.S. 22 until I could come to West Virginia." As it turns out, petitioner "had taken the same route." Accordingly, Trooper Hoder "stayed behind the vehicle that at this time was traveling normal speeds. As soon as I deactivated my lights he went back to driving normal like nothing happened." Once the Jeep traveled back into West Virginia, entering Brooke County, Trooper Hoder "reactivate[d] the pursuit." The driver of the Jeep "sped back up again." More vehicles were on the road, which the driver "pass[ed] in a reckless manner." Additional officers were waiting, and "we were able to bring the vehicle to a stop without incident" on U.S. 22 in Brooke County. Trooper Hoder identified petitioner as the individual arrested at that time.

Following his arrest, petitioner admitted to the trooper that he "had had a couple beers and also had taken approximately two and a half of his Subutex," which Trooper Hoder confirmed "is a controlled substance that can cause impairment." Petitioner also failed the field sobriety tests administered by the trooper, and in petitioner's statement to Trooper Hoder, he said he "ran because his registration plate was bad."

Following Trooper Hoder's testimony, the State rested. Petitioner moved for judgment of acquittal on all counts. The court denied petitioner's motion, and the defense then rested without putting on any evidence. The jury found petitioner guilty of fleeing while DUI, DUI, and reckless fleeing.

Subsequent to petitioner's guilty verdicts, the State filed a recidivist information alleging that petitioner was convicted in June of 2008 of the felony offense of delivery of heroin and seeking an enhancement of the sentence imposed for petitioner's reckless fleeing conviction. *See* W. Va. Code § 61-11-18 (specifying that reckless fleeing qualifies for recidivist enhancement).

Petitioner moved for a new trial in October of 2020. Petitioner argued that the court erred in considering petitioner's silence in determining whether the State met its burden at the suppression hearing and that the State failed to meet its burden of proof at trial beyond a reasonable doubt.[3] With respect to petitioner's arguments concerning the suppression hearing, the court noted that petitioner presented no new facts or law that would require the court to change its earlier ruling on petitioner's motion to suppress, so it denied relief on that ground. In denying a new trial based on the alleged insufficiency of the evidence, the court also found that "after reviewing the evidence in the light most favorable to the prosecution and the jury's finding of guilt as to all the charges levied against the [petitioner], . . . any rational trier of fact could have found the essential elements of the crime[s] proved beyond a reasonable doubt."

The parties appeared for sentencing on November 30, 2020. Petitioner was sentenced to not less than three nor more than ten years in prison for his fleeing while DUI conviction and to six months in jail for his DUI conviction, which was ordered to run concurrently with his fleeing while DUI conviction. The court deferred sentencing on petitioner's reckless fleeing conviction as that sentence remained in flux due to the pending recidivist information.

The parties entered into a plea agreement to resolve the recidivist information. Petitioner agreed to admit that he is the same individual previously convicted of delivery of heroin and to plead guilty to a separate DUI offense charged in another indictment (Case No. 20-F-59). In exchange, the State agreed to dismiss the charges previously severed as well as the remaining charges in Case No. 20-F-59. The parties further agreed that petitioner would serve his enhanced sentence for reckless fleeing consecutively to the sentences imposed for fleeing while DUI and DUI and that petitioner would be sentenced to six months in jail for the DUI conviction in the separate case, which would run concurrently with petitioner's sentences for fleeing while DUI, DUI, and reckless fleeing.

On February 12, 2021, the parties appeared for a plea and sentencing hearing. In line with the agreement reached between the parties, petitioner admitted to being the same person previously convicted of the felony offense of delivery of heroin, so the sentence imposed for his reckless fleeing conviction was enhanced to two to five years of incarceration. The court ordered that sentence to run consecutively to his fleeing while DUI and DUI convictions. Petitioner was also sentenced to six months in jail for his misdemeanor DUI conviction, which was ordered to run concurrently with the fleeing while DUI conviction. Petitioner now appeals.

First, petitioner argues that the circuit court erred in relying on his silence at the suppression hearing in denying his motion to suppress and that the court, in relying on his silence, impermissibly shifted the burden of proof to him. Petitioner notes that, after the court ensured that petitioner did not wish to testify at the suppression hearing, it ruled, "Well, based on that and without hearing the defendant's testimony, this all comes in as knowing and voluntary." Petitioner asserts that this statement confirms that the court denied his motion to suppress because he chose not to testify, not because it found Trooper Hoder's testimony credible.

---

[3] An additional ground raised below but not pursued on appeal is not described here.

Petitioner also highlights that in the court's written order, it recounted petitioner's decision not to testify. From that, petitioner speculates that the court "seem[ed] concerned with *why* [he] would not testify" and suggests that "[i]t is almost as if the [c]ourt is saying that it tried to get the defendant to testify, but he wouldn't do it." Then, with these assumptions as background for his next leap, petitioner argues that the court's conclusion that "the unrebutted and uncontested testimony presented by the State sufficiently satisfies its burden that *Miranda* warnings were waived by [petitioner]" demonstrates that the court shifted the burden of proving voluntariness to petitioner. In short, petitioner claims that he had a right to remain silent at all stages of the proceeding and that, by drawing negative inferences from his silence, the court impermissibly shifted the burden of proof to him at the suppression hearing.

We review orders addressing motions to suppress under the following standard: "On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 3, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

We need not consider whether petitioner properly invoked the Fifth Amendment or whether the circuit court could permissibly have drawn negative inferences from petitioner's silence at the suppression stage because, put simply, the record does not support petitioner's characterization of the court's action. We begin by observing that the court's statements at the suppression hearing regarding calling petitioner to testify were geared toward ensuring that petitioner's claimed basis for suppression was understood in light of the confusing nature of his written motions. In the court's written order, it recounted that petitioner did not take the stand in the portion of the order setting forth the general details of the hearing, such as the date and time of the hearing, who was present, and who testified. It drew no inferences or conclusions of any kind relative to petitioner's choice not to testify either in that introductory portion of the order or in the "Discussion and Order" portion where the court detailed the applicable law, detailed the evidence presented by the State, and analyzed how the State met its burden in proving the voluntariness of petitioner's statement.

With specific respect to this burden, petitioner accurately recites that "[t]he State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." Syl. Pt. 3, *State v. Persinger*, 169 W. Va. 121, 286 S.E.2d 261 (1982) (citation omitted). But his claim that the court impermissibly shifted this burden to him is inaccurate. The court stated at least twice at the suppression hearing that the State bore the burden of proof, and it set forth this law in its written order. The court then described in its order Trooper Hoder's testimony that petitioner acknowledged understanding his rights more than once, that petitioner appeared to the trooper to understand those rights, and that petitioner was not under duress or coercion. The court further noted that, in fact, petitioner did not argue that he was coerced, had any mental deficiency, or was otherwise incapable of waiving his rights, so the unrebutted testimony from Trooper Hoder "sufficiently satisfie[d] its burden" of proving that petitioner understood his rights. In further careful review of the evidence presented, the court set out the trooper's testimony that he informed petitioner of his rights at least twice,

7

which petitioner waived in writing. In other words, it is clear that the court analyzed the evidence *presented by the State*—not petitioner's silence—in finding that the State met *its* burden in proving voluntariness.[4] There is no merit to petitioner's claim that the court impermissibly shifted the burden of proof at his suppression hearing.

Petitioner lastly argues that the court erred in denying his motion for judgment of acquittal. He claims that the evidence was insufficient "because it failed to show that the person arrested on Route 22 in Brooke County . . . was the same person who was driving the Jeep earlier that day in Hancock County." An element of each of the offenses of which petitioner was convicted is that the defendant was driving a motor vehicle, but he claims that there was no evidence that he was driving a motor vehicle in Hancock County. *See* W. Va. Code §§ 61-5-17(j) ("A person who intentionally flees or attempts to flee in a vehicle . . . ."), 17C-5-2(e) ("Any person who drives a vehicle . . . ."), and 61-5-17(f) ("A person who intentionally flees or attempts to flee in a vehicle . . . ."). Petitioner argues that no one identified the driver of the Jeep during the pursuit in Hancock County, and Trooper Hoder did not testify that he had the Jeep under constant observation while it was in Pennsylvania. Petitioner submits that "there is no reason that the driver of the Jeep could not have changed in Pennsylvania without Trooper Hoder seeing it." He proposes that "[p]erhaps [petitioner] was in the Jeep during that Hancock County pursuit but someone else was driving, and that person got out in Pennsylvania, and then he only drove back to Brook County."

"[T]he Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Jenner*, 236 W. Va. 406, 413, 780 S.E.2d 762, 769 (2015) (citations omitted). But under this Court's well-settled law regarding sufficiency of the evidence claims, "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). This is because our review is "highly deferential to the jury's verdict," *State v. Thompson*, 240 W. Va. 406, 414, 813 S.E.2d 59, 67 (2018), and we "review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and . . . credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution." *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. Importantly, "[t]he evidence need not be inconsistent with every conclusion save that of

---

[4] Petitioner claims that the court's statement following his decision not to testify—i.e., "based on that and without hearing the defendant's testimony, this all comes in as knowing and voluntary"—evidences the court's reliance on his silence in ruling on his motion to suppress. In view of the hearing as a whole, we disagree with the conclusion petitioner has drawn. Nevertheless, we note that "where a circuit court's written order conflicts with its oral statement, the written order controls." *State v. John H.B.*, No. 18-0905, 2019 WL 5092948, *4 (W. Va. Oct. 11, 2019)(memorandum decision) (citing *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006)). So, if at the hearing the court stated it relied on petitioner's failure to testify, and if that reliance was improper, it is clear that the court's written order stated that the State bore the burden and that the State met its burden based upon the evidence it produced. The written order controls.

guilt so long as the jury can find guilt beyond a reasonable doubt," and "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.*

Trooper Hoder testified that the Jeep and the license plate removed from it belonged to petitioner, and Officer DeStefano testified to his recollection that the plate belonged to the petitioner. The plate, however, did not belong on the Jeep but on another vehicle, so the officers removed it. Trooper Hoder later observed the plate-less Jeep that belonged to petitioner in Hancock County, he initiated pursuit of that Jeep, and he described that the driver fled and drove recklessly in Hancock County. Trooper Hoder testified to the roads traveled during the approximately thirty-minute pursuit, and he testified that the pursuit took him into Pennsylvania. Although Trooper Hoder testified that he discontinued the pursuit upon entering Pennsylvania, the trooper saw that the Jeep was, in fact, taking "the same route heading back to West Virginia" that the trooper was taking, so the trooper "went ahead and stayed behind the vehicle." Trooper Hoder's criminal investigation report, which was entered into evidence, likewise details that the trooper "discontinued pursuit once the vehicle made it to Rt. 18 in Pennsylvania. The vehicle was driving normal at this point and the undersigned officer followed the vehicle to US Rt. 22 where it turned westbound on to US Rt. 22, heading towards WV." Trooper Hoder initiated pursuit again once the Jeep entered back into West Virginia, and the driver was eventually stopped and arrested. The driver was identified as petitioner, and in his statement to the police, he acknowledged he was operating a vehicle. Trooper Hoder testified that the "first question" was, "Were you operating a vehicle?" Petitioner responded, "Yes," and he said he "ran because his registration plate was bad."

Viewing this evidence in the light most favorable to the State and crediting all inferences that the jury might have drawn in favor of the State, we find ample evidence from which the jury could have found that petitioner was driving his Jeep in Hancock County.[5] The Jeep belonged to him, and pursuit was initiated in and continued through Hancock County. While not officially pursuing the Jeep in Pennsylvania, Trooper Hoder testified that he was in fact able to continue following the Jeep because it was traveling the same route back to West Virginia as the trooper. In positing that he could have gone from passenger to driver while in Pennsylvania, petitioner is, in effect, arguing that the evidence needed to have been inconsistent with every conclusion save that of guilt. Of course, this Court takes the exact opposite position in reviewing the sufficiency of the evidence. *See id.* Finally, petitioner admitted he was driving, and he explained that he fled because his license plate "was bad." To be sure, petitioner's license plate was "bad," as the officers confirmed in removing it from his car earlier that day in Hancock County. Petitioner has not met his heavy burden of establishing an insufficiency of the evidence to support his convictions.

---

[5] Petitioner only challenges the sufficiency of the evidence as to whether he was driving the vehicle in Hancock County, not to the other elements of the crimes of which he was convicted. Accordingly, a discussion of the evidence offered in support of the other elements is unnecessary.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice C. Haley Bunn