## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.E.**

**No. 22-0411** (Hardy County 21-JA-122)

## MEMORANDUM DECISION

Petitioner Grandmother C.S.[1] appeals the Circuit Court of Hardy County's April 26, 2022, order enjoining her from contact with K.E.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Because petitioner failed to move for, and was never granted, intervenor status in the proceedings below, the appendix record before this Court is extremely limited. It appears that the proceedings were initiated in July of 2021, although none of the petitions filed below are included in the record on appeal. Critically, the record shows that the child's parents were deemed nonabusing below, and the child has been returned to their shared custody under a parenting plan approved by the court.

In March of 2022, petitioner sent correspondence to the court requesting a meeting with the presiding judge out of "extreme[] concern[]" for the child and because she believed that important information had been withheld from the court and the parties. Petitioner then appeared for a hearing that same month, during which the circuit court permitted her to testify. During the testimony, the court reprimanded petitioner for having confronted the guardian ad litem and "cussing her out," warning petitioner that further verbal attacks on a judicial officer could result in criminal consequences. During her testimony, petitioner vaguely alluded to the child having been harmed in some way, although she offered nothing concrete. However, counsel for the DHHR assured petitioner that he "talked to the evaluator, and . . . talked to [the child's] therapist; and neither of them support what you're saying today." Further, counsel for one of the adult

---

[1]Petitioner appears by counsel Eric S. Black. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Brittany Ryers-Hindbaugh. Joyce E. Stewart appears as the child's guardian ad litem. The child's mother appears by counsel Cathe L. Moreland. The child's father appears by counsel Nicholas T. James.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

respondents in the matter[3] expressed concern that petitioner was coaching the child to make certain disclosures, none of which had been supported by evidence despite extensive investigation over an extended period. According to the attorney, petitioner's conduct was negatively affecting the child. There were also accusations that petitioner interfered with the mother's relationship with the child, having told the child that the child's mother "was not her mother."

At a hearing the following month, the court was informed that petitioner "continue[d] to cause problems" by confronting the child and the child's father at the child's gymnastics class, creating "a horrible situation." At that point, the prosecuting attorney confirmed that the DHHR would be asking the West Virginia State Police to immediately initiate an investigation into petitioner. The guardian then moved the court for a restraining order against petitioner. The court concluded that petitioner's conduct was detrimental to the child's welfare and best interests and granted the motion. In the subsequent final dispositional order following this hearing, the court found "upon clear and convincing evidence" that petitioner's conduct constituted "psychological abuse and danger to the [r]espondent [p]arents and child." Accordingly, the court "enjoined [petitioner] from any direct or indirect contact" with the child or the child's parents. It is from this order that petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner challenges the circuit court's order prohibiting contact between her and the child because she asserts that she is the child's psychological parent and because she believes that the finding that she caused psychological abuse and danger to the respondent parents and child is not supported by the record. Upon our review, we find no error, given that petitioner's assertion that she was a psychological parent to the child lacks an evidentiary basis.

As petitioner notes, the record concerning her relationship to the child is limited, as she was not a party to the proceedings. However, even taking petitioner's unsupported assertions at face value, it is clear that she was not the child's psychological parent. As we have explained,

> "[a] psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian."

---

[3]The proceedings in circuit court concerned additional children who are not at issue on appeal.

[4]The child was returned to the nonabusing parents' shared custody under an approved parenting plan.

Syl. Pt. 4, in part, *In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015) (citation omitted). In her brief on appeal, petitioner alleges that the child "resided with the [p]etitioner . . . and the [r]espondent parents . . . from approximately October 2017 . . . until approximately 2018." According to petitioner, she had contact with the child "on a nearly daily basis" and assisted the parents in caring for the child by taking her to medical appointments and gymnastics practice. Petitioner also notes that she would take the child to the maternal great-grandmother every day, as the great-grandmother provided "daycare" services for the parents. At best, petitioner's assertions demonstrate that the child stopped living in her home three years prior to the initiation of the current proceedings, thereby undercutting her position that she was a psychological parent.

Petitioner further relies on ambiguous statements from the father's counsel in which he discussed multiple individuals without identifying petitioner. Specifically, the father's counsel, in discussing placement of the child, stated that the parents "have acquiesce[d] to *these folks* to provide care for the child since she had been born. So *she's* a substantial caretaker. *She's* probably a psychological parent." (Emphasis added). The child's father then clarified that he did "not want to just rip away [K.E.] from . . . the *great-grandmother*." (Emphasis added). Petitioner relies on these discussions to argue that the father believed she was a psychological parent, but we do not agree. As petitioner admits, it was the great-grandmother who provided daily "daycare" services for the child, which is confirmed by the father clarifying that he did not want to "rip[ the child] away from where she has been her whole life during every Monday through Friday consistently." In short, the portions of the record to which petitioner cites do not support her position, as neither the father nor his counsel ever identify petitioner as an individual they believe was a substantial caretaker. Significantly, petitioner was permitted to testify but provided no concrete testimony related to any of the factors necessary for consideration as a psychological parent. Accordingly, she is not entitled to relief.

Finally, we find that the circuit court was correct in prohibiting petitioner from jeopardizing the child's welfare and best interests. The court addressed at least two incidents in which petitioner engaged in inappropriate behavior; one in which she confronted the child's guardian ad litem and "cuss[ed] her out," and another in which she harassed the child and the child's father at a gymnastics practice. Although unclear from the record what, exactly, occurred, counsel for the DHHR indicated that the State would be investigating petitioner's conduct for possible criminal charges. As we have routinely held, "[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014) (citation omitted). Given that the court found[5] that petitioner's conduct amounted to psychological abuse and harmed the child, we find no error in the court prohibiting her from contacting the child. *See* W. Va. R. of Proc. for Child Abuse and Neglect Proc. 36(c)(3) (permitting a court to issue restraining orders to prevent frustration of the dispositional order). Further, we disagree with the petitioner's assertion that the court lacked

---

[5]Petitioner makes much of the fact that this finding was not contained in the transcript of the hearing but, instead, appeared in the order. This is of no consequence, as the court was not required to make such a finding on the record, given that "[i]t is a paramount principle of jurisprudence that a court speaks only through its orders." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006) (citations omitted).

3

evidence upon which to base this finding. As noted above, multiple individuals informed the court about petitioner's egregious conduct. As such, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 26, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: March 7, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn