**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **I.B.-1, I.B.-2, and R.B.-1**

**No. 25-132** (Nicholas County CC-34-2024-JA-76, CC-34-2023-JA-147, and CC-34-2023-JA-148)


**MEMORANDUM DECISION**


Petitioner Mother R.B.-2[1] appeals the Circuit Court of Nicholas County's February 10, 2025, order terminating her parental and custodial rights to I.B.-1, I.B.-2, and R.B.-1, arguing that the court erred in terminating her parental and custodial rights based on erroneous findings.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In December 2023, the DHS filed a petition[3] alleging that the parents engaged in domestic violence. Specifically, the DHS detailed incidents in which the father broke the petitioner's nose by punching her and the petitioner struck the father with a vehicle. The DHS further alleged that the petitioner permitted the children to be around the maternal grandfather who is a registered sex offender. The parents initially obtained domestic violence protective orders against one another but later voluntarily dismissed them despite knowing that the DHS would seek emergency custody of the children as a result. Although the DHS sought emergency custody, the removal was not ratified, and the children remained in the home following the petition's filing. As a result, the DHS implemented a safety plan in the parents' home.

At an adjudicatory hearing the following month, the petitioner stipulated to the allegations, and the circuit court adjudicated her of abusing and neglecting I.B.-2 and R.B.-1. The court also granted the petitioner's motion for a post-adjudicatory improvement period, the terms of which required her to, among other things, submit to drug and alcohol screens, remain free of drugs and

---

[1] The petitioner appears by counsel Joseph M. Mosko. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Counsel Susan Hill appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because multiple individuals involved in this proceeding share the same initials, we use numbers to differentiate them.

[3] At the time the DHS filed the initial petition, I.B.-1 was not yet born.

1

alcohol, participate in family and individualized counseling with a focus on domestic violence, and participate in DHS services.

At a review hearing in April 2024, the DHS sought emergency removal of the children from the parents' care because the father tested positive for marijuana on several occasions and the petitioner missed several drug screens. The guardian supported removal, noting that the parents were "wholly non-compliant and appear to have no real concept of how serious this matter is." The court ordered the children to be removed from the home and placed in the DHS's custody. The court further required the parents to complete a Batterer Intervention and Prevention Program ("BIPP") as part of their improvement periods. Thereafter, the petitioner submitted to a psychological evaluation which returned a poor prognosis for improved parenting based on the petitioner's dishonesty and the likelihood that she would not be an active participant in treatment. During the evaluation, the petitioner denied any physical violence in the home, despite her earlier stipulation to domestic violence.

In June 2024, the circuit court held a hearing on the DHS's motion to revoke the parents' improvement periods. The court heard testimony from the parents and a Child Protective Services ("CPS") worker, who testified to the parents' noncompliance. The court found that the parents' "reasons for not screening are not credible and do not make sense." Further, the court found that the parents had "not taken their improvement periods seriously" and, therefore, revoked them. The following month, the DHS filed an amended petition after the birth of I.B.-1. The DHS alleged that the child was abused and/or neglected by the parents' failure to remedy the conditions for which they were previously adjudicated. At an adjudicatory hearing in December 2024, the parents stipulated to the allegations in the amended petition, and the circuit court adjudicated them of abusing and neglecting I.B.-1.

In January 2025, the guardian filed a report in which she recommended termination of the parents' parental rights. The guardian noted that the petitioner had not visited the two older children for several months and never visited with the youngest child. Ultimately, the guardian indicated that the petitioner willfully refused to participate in all services offered. That same month, the DHS filed a report in which it also recommended termination of the parents' parental rights for similar reasons, including that the petitioner ceased participating in a program at the local day report center and had at least one positive screen for marijuana.

At the final dispositional hearing in February 2025, the court heard extensive evidence about the petitioner's failure to comply with DHS services. In regard to the requirement that she complete BIPP services, a CPS worker testified that the provider did not offer BIPP services for women. However, the CPS worker explained that, as an alternative, the petitioner was required to participate in domestic violence services through another provider, but she failed to do so. The petitioner testified and admitted that she ceased attending counseling as directed, among other things. Based on the evidence, the court found that "[s]ince the beginning of this case [the parents] have failed to participate in any meaningful way with any services offered." In response to the parents' "numerous excuses for not participating," the court found that none of them were credible and that the parents were "dishonest and non-compliant with all interactions with the [DHS]." The court also stressed that, since the hearing in December 2024, the parents had not contacted the DHS and failed to submit to any drug screens. Additionally, the court emphasized that the

petitioner had not visited the two older children since April 2024 and never exercised visitation with the youngest child. The court also found that the petitioner's testimony that no domestic violence or drug use occurred in the presence of the children not only lacked credibility, but "also shows her attitude that as long as domestic violence and marijuana use are not around the children then they are acceptable." Accordingly, the court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future and that the children's welfare required termination of her rights. As such, the court terminated the petitioner's parental and custodial rights to the children.[4] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating her parental and custodial rights based upon the erroneous finding that domestic violence continued after the petition's filing.[5] Indeed, as the DHS admits, there was no evidence of additional incidents of domestic violence during the proceedings. However, the petitioner ignores the fact that this finding, made on the record at the dispositional hearing, appears nowhere in the court's subsequent order. As we have routinely explained, "[i]t is a paramount principle of jurisprudence that a court speaks only through its orders." *In re J.P.*, No. 18-0171, 2018 WL 6040185, at *4 (W. Va. Nov. 19, 2018) (memorandum decision) (quoting *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006)). Based on our review of the record, it does not appear that the circuit court based termination of the petitioner's rights upon this finding. Instead, termination was based on the court's lengthy, detailed findings concerning the petitioner's willful refusal to participate in remedial services designed to remedy the conditions of abuse and neglect.

Moreover, we find no merit to the petitioner's assertion that the court erred in finding that domestic violence, the condition of abuse and neglect of which she was properly adjudicated, persisted. On the contrary, given the petitioner's failure to successfully complete any of the services offered, the court was correct in finding that the petitioner had not remedied the issue of domestic violence. This includes the petitioner's failure to successfully participate in the alternative to BIPP services specifically designed to address domestic violence. And while it is true that a parenting provider testified that the petitioner finished one section of her program dealing with domestic violence, the provider clarified that the petitioner did not complete the entire

---

[4] The court also terminated the father's parental and custodial rights to the children. The permanency plan for the children is adoption in their current placement.

[5] The petitioner also claims that the circuit court's finding that she had no bond with the two oldest children was erroneous. It is unnecessary to address this argument, however, because the existence of a close emotional bond is a factor to be considered in deciding whether to award post-termination visitation. *See* Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Although the circuit court here denied the petitioner post-termination visitation, she does not challenge this ruling on appeal. As more fully set forth above, it is clear that the circuit court had ample evidence upon which to base the findings necessary for termination, this allegedly erroneous finding notwithstanding.

program. Further, after stipulating to domestic violence, the petitioner claimed that no violence ever occurred in the home. Based on this failure to acknowledge the conditions, it is clear that the petitioner was incapable of correcting the issue. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem . . . results in making the problem untreatable." (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004))). Additionally, the court noted that the petitioner failed to visit the two older children since April 2024 and failed to have a single visit with the youngest child. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996).

In short, the circuit court had ample evidence upon which to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect, as West Virginia Code § 49-4-604(d)(3) provides that there is no such likelihood when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Further, the record supports the court's finding that termination was necessary for the children's welfare, a finding that the petitioner does not challenge on appeal. West Virginia Code § 49-4-604(c)(6) permits circuit courts to terminate parental and custodial rights upon these findings. *See also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) ("Termination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))). As such, we conclude that the circuit court did not err in terminating the petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 10, 2025, order is hereby affirmed.

Affirmed.


**ISSUED**: March 3, 2026


**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4